**STATE of Iowa, Appellee,**

v.

**Nathaniel TAYLOR, Appellant.**

No. 02–1268.

Supreme Court of Iowa.

Nov. 19, 2004.

Alfredo G. Parrish and Andrew Dunn of Parrish, Kruidenier, Moss, Dunn, Boles & Gribble, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kristin A. Guddall, Assistant Attorney General, Stephen H. Holmes, County Attorney, and Timothy C. Meals, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Nathaniel Taylor, seeks further review of the court of appeals' decision affirming his convictions for domestic abuse assault causing bodily injury and first-degree burglary. In addition to asserting various ineffective-assistance-of-counsel claims, he challenges certain evidentiary rulings by the trial court, the sufficiency of the evidence, and the district court's refusal to grant a new trial on the assault and burglary charges. Although we concur in the court of appeals' determination that the defendant's convictions should be affirmed, we disagree slightly with that court's disposition of the defendant's ineffective-assistance-of-counsel claims. Accordingly we vacate the decision of the court of appeals and affirm the judgment of the district court.

I. *Background Facts and Proceedings.*

Viewed in the light most favorable to the trial court's ruling, the record shows the following facts. Prior to the incident giving rise to the present charges, Taylor's wife, Susan Taylor, had obtained a temporary protective order prohibiting contact between her and the defendant as well as between the defendant and the Taylors' two young children. Three days after issuance of this order, on December 2, 2001, Susan and the children attended Sunday evening church services with Susan's friend, Michelle Vincent. As they were leaving the church parking lot in Vincent's minivan, they saw Taylor drive by. After following Taylor for a short distance to determine the direction in which he was headed, Vincent pulled back into the parking lot and called the police on her cell phone.

The defendant followed Vincent into the church parking lot, got out of his car, and began pounding on Vincent's vehicle, yelling "I just want five f* * *ing minutes, you f* * *ing bitch." Susan began crying and screaming for Vincent to drive away. When Vincent attempted to do so, Taylor jumped back into his vehicle and tried to ram Vincent's van. Eventually, Vincent's vehicle became wedged between some parked cars and Taylor's car.

The defendant again got out of his vehicle and began pounding on Vincent's van, yelling angrily and using profane language as he had before. When Vincent tried to move her van, the defendant jumped on the hood and began hitting the windshield, causing the glass to crack. Vincent was finally able to maneuver around the parked cars and that caused Taylor to fall off the hood of the van. He then approached the passenger side window where Susan was seated and began pounding on the window, eventually causing it to shatter. Susan and the children were screaming, and one of the children begged Taylor to go away. Notwithstanding these pleas, Taylor reached into the van and yanked his wife, who was then five months pregnant, out through the broken window.[1] He encountered some difficulty in doing so, as she was strapped in her seat belt and her feet became entangled in the belt.

Once Taylor had extricated Susan from the van, he threw her over his shoulder, took her to his car, and shoved her into the front passenger seat. He then quickly drove over the church lawn, through a ditch, and up onto the highway. As they drove, Susan agreed to talk with the defendant about their marital problems. Taylor ultimately parked behind some nearby storage buildings where his vehicle could not be seen from the street. The police were unsuccessful in locating the defendant or his car.

In the end, Taylor and Susan walked to the police station, and Taylor turned himself in for violating the no-contact order. Susan was still frightened and upset. She began to write a statement for the police, but stopped because she was afraid of her husband.

Vincent took Susan to the emergency room that night, where Susan was examined by a physician. Susan told the doctor she had been pulled out through a car window while she was still wearing her seat belt. The physician believed the risk to Susan's unborn child was significant enough that the doctor transferred Susan to the obstetrics unit of the hospital for fetal monitoring. No problems were detected, and Susan was released after a few hours. The next day, Susan was stiff and sore. She also had small bruises on her right scapula and across her chest, as well as some scratches on her neck. The emergency room doctor confirmed at trial that the marks on Susan's shoulder and chest were consistent with being pulled out of a fastened seat belt.

In addition to Susan's injuries, the defendant caused damage to Vincent's van in excess of $1440. He broke out the passenger-side window, broke the passenger-side seat belt, dented the fender, and cracked the windshield.

Taylor was charged with third-degree kidnapping, domestic abuse assault causing bodily injury, first-degree burglary, second-degree criminal mischief, and assault while participating in a felony. He waived a jury trial, and Judge Carl D. Baker found him guilty of domestic abuse

1. Susan is four feet, ten inches tall and in December 2001 weighed approximately 100 pounds. Taylor is five feet, ten inches tall and weighed about 175 pounds at the time of the incident at issue here.

assault causing bodily injury, first-degree burglary, and second-degree criminal mischief. The defendant was found not guilty of the kidnapping and assault-while-participating-in-a-felony charges.[2]

After Judge Baker recused himself for reasons not pertinent to this appeal, Judge John S. Mackey ruled on Taylor's posttrial motions. Judge Mackey vacated the criminal mischief conviction, *see* Iowa R.Crim. P. 2.24(2)(*b*)(6), (*c*), but refused to grant relief on the other guilty verdicts. Taylor was subsequently given an indeterminate twenty-five year sentence on the burglary conviction and was sentenced to time served on the domestic abuse assault conviction.

Taylor appealed, and the State sought discretionary review of the posttrial ruling vacating the criminal mischief conviction. Upon transfer to the court of appeals, that court affirmed on the appeal and denied the State's application for discretionary review. This court granted the defendant's application for further review. We will address the following issues: (1) the trial court's admission of evidence concerning Taylor's prior bad acts; (2) the sufficiency of the evidence to support the assault and burglary convictions; (3) the district court's refusal to grant a new trial on the assault and burglary charges; and (4) the defendant's claim that he received ineffective assistance from his trial counsel.

## II. *Admissibility of Prior Bad Acts.*

A. *Trial court proceedings and challenged evidence.* Over the defendant's objection, the trial court admitted the petition for relief from domestic abuse filed by Susan Taylor on November 29, 2001, detailing two prior abusive incidents between the defendant and his wife. Susan wrote in her application that in late September,

> He [Taylor] was upset with me ... and as I was holding our daughter and being 2½ months pregnant he pushed me into the living room door and I fell to the hardwood floor. My daughter & I were screaming as our son ran to the neighbors to get help. He tried to take both children out of the house. My daughter & I ran outside & ran to the neighbors.

In addition, she described another incident that occurred in October:

> He [Taylor] was upset because I wasn't home when he wanted me to be. He punched a hole into the kitchen to unlock the door. When I returned ... he was very angry. He had the gun laying on the dining room table and bullets. He was telling me to get the kids to bed and that he wanted me out in the garage to kill me.

The court also admitted the temporary protective order issued as a result of these allegations.

The prosecutor was permitted to question Susan at trial concerning the statements she made in the application. Susan did not dispute that either incident occurred, but claimed the defendant had not threatened to kill her in October. She testified that she meant to write on the petition that her husband wanted to kill himself, not her. Similarly, the defendant admitted at trial that these incidents had occurred but contended he had threatened

---

**2.** The court observed that assault while participating in a felony is a lesser included offense of first-degree burglary. The court concluded, therefore, that because the defendant had been convicted of first-degree burglary, "he cannot also be convicted of assault while participating in a felony." Accordingly, the court held the defendant was "not guilty of assault while participating in a felony because this crime is merged in the offense of burglary in the first degree."

to kill himself, not his wife, in the October confrontation.[3]

■ The court admitted this evidence on the issue of intent, which the court noted was "a hotly-contested issue" in the case. Taylor asserts on appeal that the evidence of his prior assaultive conduct was inadmissible under Iowa Rule of Evidence 5.404(*b*).[4] *Compare State v. Sullivan*, 679 N.W.2d 19, 27–28 (Iowa 2004) (cautioning against indiscriminate introduction of prior-bad-acts evidence to prove mens rea), *with State v. White*, 668 N.W.2d 850, 855 (Iowa 2003) (allowing prior incident of domestic abuse to prove intent element of kidnapping and burglary involving the same victim), *and State v. Rodriquez*, 636 N.W.2d 234, 242 (Iowa 2001) (allowing evidence of prior assaults against same victim on confinement element of kidnapping charge and on intent-to-cause-serious-injury element of willful injury and kidnapping charges).

B. *Governing legal principles.* The rules of evidence provide the framework for our analysis of this issue. In general, relevant evidence is admissible and irrelevant evidence is not admissible. *See* Iowa R. Evid. 5.402. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Even when evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Iowa R. Evid. 5.403.

■ Rule 5.404(*b*) sets forth a specific rule governing the admissibility of a person's other crimes, wrongs or acts. It provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Iowa R. Evid. 5.404(*b*). Thus, when a prosecutor seeks to introduce evidence of a defendant's prior misconduct, the evidence must be probative of " 'some fact or element in issue other than the defendant's criminal disposition.' " *State v. Castaneda*, 621 N.W.2d 435, 440 (Iowa 2001) (citation omitted). Moreover, we have held that when prior-bad-acts evidence is offered "to establish an ultimate inference of mens rea, the court should require the prosecutor to 'articulate a tenable noncharacter

3. Interestingly, the threat of suicide is one technique used by perpetrators of abuse to control their victims. *See Final Report of the Supreme Court Task Force on Courts' and Communities' Response to Domestic Abuse* 9 (August 1994) [hereinafter *Domestic Abuse Task Force Report*].

4. It is unclear from the defendant's brief on appeal whether he continues to challenge the trial court's admission of the no-contact order. In the event his arguments with respect to prior-bad-acts evidence is meant to encompass the no-contact order, we simply state that we find no abuse of discretion in the court's admission of this evidence. Clearly, Taylor's awareness of this order, which was sought by his wife and prohibited him from having contact with his wife and children, is highly probative of whether he knew his actions would be insulting or offensive to his wife. *See* Iowa Code § 708.1(1) (2001) (defining "assault" to require that defendant intend his act to cause physical contact that will be insulting or offensive to victim). Moreover, the no-contact order did not contain any details concerning the defendant's prior assaults and threats against his wife, and so the prejudicial impact of this document was minimal. We hold, therefore, that the trial court did not abuse its discretion in concluding the relevancy of this evidence was not substantially outweighed by its prejudicial effect.

theory of logical relevance.'" *Sullivan,* 679 N.W.2d at 28 (citation omitted).

■ If a court determines prior-bad-acts evidence "is relevant to a legitimate factual issue in dispute, the court must then decide if its probative value is *substantially* outweighed by the danger of unfair prejudice to the defendant." *Id.* at 25 (emphasis added) (citing Iowa R. Evid. 5.403). Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party. *Rodriquez,* 636 N.W.2d at 240. In determining whether unfair prejudice generated by evidence of a defendant's other misconduct substantially outweighs the probative value of the evidence, the court should consider the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis. *Id.*

■■ In considering whether the trial court properly admitted prior-bad-acts evidence, we apply an abuse-of-discretion standard of review. *Id.* Recognizing that " '[w]ise judges may come to differing conclusions in similar situations,'" we give " 'much leeway [to] trial judges who must fairly weigh probative value against probable dangers.'" *Id.* (citation omitted).

■ C. *Relevancy.* The trial court admitted evidence of the defendant's prior assaults against his wife on the issue of intent. We first consider whether this decision complied with the relevancy requirement of rule 5.404(*b*) and *Sullivan*: is the prior-misconduct evidence relevant to the defendant's intent for a reason other than to show that a person guilty of such mis-

conduct would have a propensity to commit assaults and burglaries? We conclude it is.

It is first essential to identify whether intent was at issue in the case. *See Sullivan,* 679 N.W.2d at 25 (requiring that evidence be relevant "to a *legitimate* issue in the case other than a general propensity to commit wrongful acts"). The charge of first-degree burglary rested on Iowa Code sections 713.1 and 713.3(*c*) (2001). The basic crime of burglary is defined in section 713.1 as follows:

> Any person, *having the intent to commit a felony, assault or theft therein,* who, having no right, license or privilege to do so, *enters* an occupied structure, such occupied structure not being open to the public, ... *or any person having such intent who breaks* an occupied structure, commits burglary.

Iowa Code § 713.1 (emphasis added). Burglary is in the first degree "if, while perpetrating a burglary in or upon an occupied structure in which one or more persons are present," the defendant "*intentionally* or recklessly inflicts bodily injury on any person." *Id.* § 713.3(*c*) (emphasis added). Thus, to prove burglary, the State was required to establish that the defendant, at the time he broke the passenger window or at the time his hands entered the Vincent van, had the intent to commit a felony or an assault. In addition, to establish that the burglary was in the first degree, the State had to prove that during the course of the burglary, the defendant intentionally or recklessly inflicted bodily injury on Susan Taylor.

Clearly, the defendant's intent was disputed at trial. In fact, intent was the only contested issue on the basic burglary charge, as the identity of the defendant as the perpetrator of the crime and his actions in breaking the window and taking

his wife out of the van were undisputed. Thus, Taylor's only defense was that he accidentally broke the passenger window on Vincent's minivan, and consequently, he did not break an occupied structure with "the intent to commit a felony, assault, or theft therein." *Id.* § 713.1. The defendant also argued at trial that after he accidentally broke the window, his hands were inside the vehicle, and it was only at that point that he formed the intent to pull his wife out of the van. Therefore, he argued, not only did he not break the vehicle with the necessary intent, he did not *enter* the vehicle with the requisite intent. Finally, the defendant also contended at trial that he did not intend to inflict bodily injury on his wife when he broke and entered the vehicle she was in; he asserted he only wanted to talk to her.

A similar intent issue was generated by the assault charge. Taylor was charged with a violation of Iowa Code section 708.2A(1) by committing an assault as defined in section 708.1(1), which was domestic abuse as defined in section 236.2(2). An assault under section 708.1(1) is

> [a]ny act *which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another,* coupled with the apparent ability to execute the act.

*Id.* § 708.1(1) (emphasis added). Thus, the State was required to prove the defendant intended to cause pain and injury to his wife or to have physical contact that would be insulting or offensive to her when he lifted her out of the van. Again, Taylor's defense against the basic assault charge was that he did not act with the requisite intent—he only wanted to talk to his wife. We conclude from this record that the defendant's intent was a legitimate, contested issue at trial. *See* Abraham P. Ordover, *Balancing the Presump-*

*tions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a),* 38 Emory L.J. 135, 152 (1989) ("Defenses that would place intent in issue include ... mistake or accident.") [hereinafter "Ordover Article"].

We also think there is a logical connection between a defendant's intent at the time of a crime, when the crime involves a person to whom he has an emotional attachment, and how the defendant has reacted to disappointment or anger directed at that person in the past, including acts of violence, rage, and physical control. In other words, the defendant's prior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations. *See State v. Laible,* 594 N.W.2d 328, 335 (S.D.1999) ("When an accused had a close relationship with the victim, prior aggression, threats or abusive treatment of the same victim by the same perpetrator are admissible when offered on relevant issues under Rule 404(b).").

The most obvious example of the legitimate use of prior-bad-acts evidence is the admission of evidence of a defendant's prior assaults of a victim in a prosecution of the defendant for the subsequent murder of the victim. Courts have admitted such evidence to show the defendant's motive and intent with respect to the actions giving rise to the charged crime when intent is disputed. *E.g., Stewart v. State,* 730 So.2d 1203, 1234 (Ala.Crim.App.1996) (admitting evidence of defendant's assault of murder victim ten days before victim's death where defendant claimed he accidentally shot the victim); *State v. Wood,* 180 Ariz. 53, 881 P.2d 1158, 1167 (Ariz.1994) (admitting evidence of prior abuse of victim on issues of motive and premeditation in first-degree murder prosecution where defendant claimed he had no reason to kill

victim and had acted impulsively); *State v. Featherman*, 133 Ariz. 340, 651 P.2d 868, 873 (Ct.App.1982) (admitting evidence in murder prosecution that defendant had attacked estranged wife with baseball bat two months before her death, noting evidence was not admitted merely to show propensity; rather it showed "defendant's hostility to his victim [and was] directly relevant to his intent on the night [the victim] was killed"); *People v. Illgen*, 145 Ill.2d 353, 164 Ill.Dec. 599, 583 N.E.2d 515, 520–24 (1991) (admitting evidence of defendant's prior assaults on victim as probative of defendant's intent and motive in murder prosecution where defendant claimed shooting of victim was accidental); *Ortega v. State*, 669 P.2d 935, 944 (Wyo.1983) (holding evidence of defendant's prior assault on wife admissible to prove motive where defendant claimed his shooting of wife was a mistake or accident). The Illinois Supreme Court has explained the relevancy of a defendant's prior acts of abuse against the same victim in a murder prosecution as follows:

> We agree with the State that the evidence of the defendant's prior assaults on the victim was probative of the defendant's criminal intent. . . . Whereas the shooting incident, standing alone, might appear accidental, when considered together with the evidence of the defendant's prior unprovoked attacks upon his wife, the circumstances suggest that the shooting was deliberate and not accidental. This evidence, taken together with other evidence in the case, tends to make it more probable that the defendant acted with the criminal intent required for murder and less probable that his actions were inadvertent or the product of an innocent state of mind.
>
> In addition to evidencing intent or the absence of an innocent state of mind, a defendant's prior acts of violence against the victim may also provide evidence of motive, in this case, a hostility showing him likely to do further violence. Here, the evidence that the defendant physically assaulted his wife throughout their marriage was relevant to show their antagonistic relationship and, thus, tended to establish the defendant's motive to kill her. Therefore, the evidence was relevant for a purpose other than to show the defendant's propensity to commit crime and was properly admitted.

*Illgen*, 164 Ill.Dec. 599, 583 N.E.2d at 520 (citations omitted).

The same non-propensity theory of relevance is applicable to the burglary and assault charges here. A review of the factual dispute that arose at trial supports our conclusion.

In the present case, Susan Taylor had obtained a restraining order against the defendant prohibiting him from having contact with her or the couple's children. She had moved from the family home into the residence of her friend, Michelle Vincent. To her knowledge, the defendant did not know where she was staying. Nonetheless, he tracked her down on the evening of December 2, 2001. The witnesses' characterization of the *nature* of what happen then differs considerably.

Much of the factual basis for the district court's judgment rested on Vincent's testimony, and so our initial review of the factual background of this case mirrors her account of what happened. She described angry, aggressive, and violent conduct by the defendant who was determined to talk to his wife no matter what he had to do.

The scene was characterized much differently at trial by Taylor and his wife. The defendant testified his sole purpose in going to the church that night was to talk to his wife about putting their marriage back together. He said he pulled along-

side the passenger side of Vincent's mini-van in the church parking lot, looked at his wife, put his hands together in a pleading manner, and mouthed the words, "I just want to talk to you." He denied yelling or using profanity. According to the defendant, when he got out of his car, Vincent drove her vehicle toward him. This action caused him to step onto her bumper to prevent Vincent from running over him. Vincent continued to drive, so he grabbed onto the hood. He denied doing anything while on the van other than holding on. When Vincent finally stopped, he slid off the hood and went to the side of the vehicle where his wife was sitting. He said to her, "I just want five minutes. I love you. I want to talk to you." He denied using any profanity or doing anything that would suggest he wanted to hurt his wife. He said he was not screaming, yelling, or using an angry voice; he was only pleading and almost in tears. He also claims that while he was pleading to talk to his wife, she never told him to go away.

The defendant admitted that he then began pounding on the window, but claimed he did so out of sheer emotion and was surprised when the window broke. He suggested he could not believe his pounding, which "was just like nothing," had broken the window. He paused for a few seconds after the window shattered, his hands inside the van. It was then, he testified, that he decided to lift his wife out of the van. His only thought was to put his family back together again. The defendant claimed he reached across Susan's legs and pushed the release button for the seat belt and lifted her out of the seat. He testified it took one lift and he was as careful as he could be. He then carried his wife to the car where he helped her into the front passenger seat.

The trial testimony of Susan Taylor largely corroborated the defendant's testimony.[5] She said he just pleaded to talk with her and used no threats or profanity. She testified he pounded on her window, but he was not trying to do any damage. She also said her husband had no intent to break out the window in the van, and he was surprised when it broke. Contrary to what Susan told the emergency room physician, she testified at trial that her seat belt was not buckled when her husband pulled her through the broken window. She also denied that her feet were caught in the seat belt. Susan testified that Vincent wanted to get her husband in trouble and wanted him to go to jail.

Evidence reflecting the nature of the relationship between the defendant and the victim would be crucial to a fact finder resolving the inconsistencies in the witnesses' testimony. Only by resolving these inconsistencies could the fact finder determine the actual circumstances surrounding the defendant's breaking and entering of Vincent's van, which were highly probative of the defendant's intent. For example, if the defendant and his wife had always had a loving and peaceful relationship, it would be more likely that the defendant simply wanted to calmly talk to his wife to work out their marital problems. This circumstance would make it more probable that the window broke accidentally and that the defendant did not intend to remove his wife from the van until his hands were inside the van and the opportunity fortuitously presented itself. On

---

**5.** The challenge of prosecuting domestic abuse cases without the cooperation of the victim is not unique to this case. In a survey conducted by our Domestic Abuse Task Force, prosecutors reported that the majority of domestic abuse victims were uncooperative, with some victims failing to appear to testify even after having been subpoenaed. *Domestic Abuse Task Force Report* at 40.

the other hand, if the defendant was angry with his wife and hostile toward her, then it would be more likely that he was aggressive and threatening when he found her in the church parking lot. His anger and hostility make it more probable that he intended to break out the van window so he could forcibly remove his wife from the vehicle even though he knew she was scared of him and wanted no contact with him.

The defendant's prior acts of violence toward his wife, while certainly illustrative of a propensity to use violence, also reflect his emotional relationship with his wife, which as our discussion shows, is a circumstance relevant to his motive and intent on the day in question. *See Ortega,* 669 P.2d at 944 (stating a defendant's prior abuse of victim provides "insight into a person's feelings for another which may help establish motive"); *see also Illgen,* 164 Ill.Dec. 599, 583 N.E.2d at 524 ("It is clear that other-crimes evidence often tends to implicate the character of the accused, but if the evidence is properly offered for a purpose which is permissible, then it is not excludable simply because it also implicates the character of the accused."). One court has aptly explained the relevancy of such evidence:

> In adult abuse cases, a defendant's history of threatening or violent conduct involving the same victim can be especially probative. Considered in isolation, a defendant's outward conduct may be ambiguous or entirely lawful. Only by showing that history can the state establish the justifiable inference that a defendant's charged conduct was in fact intended to engender fear on the part of the victim and that defendant knew that it was likely to do so.

*State v. Andrich,* 943 S.W.2d 841, 844 (Mo. Ct.App.1997); *accord State v. Sanders,* 168 Vt. 60, 716 A.2d 11, 13 (1998). We conclude there is a logical theory of relevance to justify admission of evidence of the defendant's prior misconduct under rule 404(*b*).[6] *See Hulsey v. State,* 866 So.2d

---

**6.** Our conclusion that the evidence at issue here is relevant is not a retreat from our decision in *Sullivan* that prior-acts evidence must show more than the defendant's mere propensity to criminal conduct to be admissible on the issue of intent. 679 N.W.2d at 28. As we noted in *Sullivan,* " '[E]vidence of an unconnected prior crime is always evidence of propensity and never evidence of a specific intent to commit the crime charged.' " *Id.* at 26 (citation omitted). Importantly, we were not concerned in that case " 'with evidence of other crimes that are somehow connected to the crime charged in the indictment. Instead, we [were concerned] with a completely unconnected, but arguably similar, occurrence as probative of the intent to commit the specific crime [then] at issue.' " *Id.* (citation omitted). In contrast, in the present case, the prior misconduct and the present crimes are connected: " 'Domestic violence is never a single isolated incident. Rather, domestic violence is a pattern of behavior, with each episode connected to the others.' " Jane H. Aiken & Jane C. Murphy, *Evidence Issues in Domestic Violence Civil Cases,* 34 Fam. L.Q. 43, 56 (2000) (citation omitted) [hereinafter "Aiken Article"]; *accord Domestic Abuse Task Force Report* at 8 (noting domestic violence is a means to achieve power and control by the abuser and once successfully used engenders additional incidents of abuse). Thus, "[e]vidence of prior bad acts is especially relevant and probative in domestic violence cases because of the cyclical nature of domestic violence." Aiken Article, 34 Fam. L.Q. at 56. The relationship between the defendant and the victim, especially when marked by domestic violence, sets the stage for their later interaction. *See Hulsey v. State,* 866 So.2d 1180, 1190 (Ala.Crim.App.2003) (" '[A]n accused's past conduct in a familial context tends to explain later interactions between the same persons.' " (Citation omitted.)). It is precisely the type of situational factor that is determinant of human behavior. *See Sullivan,* 679 N.W.2d at 24 (noting " '[s]ituational factors are often more determinant of human behavior' " than character evidence (citation omitted)). *See generally State v. Brown,* 569 N.W.2d 113, 116 (Iowa 1997) (stating "[t]he

1180, 1190 (Ala.Crim.App.2003) (admitting evidence of prior abuse against victim in defendant's prosecution for assault and burglary, holding evidence was relevant to intent and motive); *People v. McCray*, 58 Cal.App.4th 159, 67 Cal.Rptr.2d 872, 880 (1997) (holding evidence of past violence perpetrated on victim by defendant was clearly relevant to his intent to place victim in fear for her safety in prosecution for stalking and harassment); *State v. Dooley*, 851 S.W.2d 683, 688 (Mo.Ct.App.1993) (approving admission of evidence of defendant's prior violence in relationship with victim to establish motive for burglary, kidnapping, and assault of victim); *see also State v. Clark*, 83 Hawai'i 289, 926 P.2d 194, 208 (Haw.1996) (allowing evidence of incidents of defendant's prior violence toward victim to show relationship between parties as a possible explanation for victim's recantation of pretrial accusation against defendant); *Sanders*, 716 A.2d at 14 (same).

▮▮▮▮ D. *Balancing unfair prejudice against probative value.* In considering whether the trial court abused its discretion in deciding the probative value of evidence of the defendant's prior bad acts was not substantially outweighed by its unfair prejudice, we first examine " 'the actual need for the ... evidence in ... light of the issues and the other evidence available.' " *State v. Wade*, 467 N.W.2d 283, 284 (Iowa 1991) (citation omitted). As the district court noted when it admitted this evidence, the defendant's intent was "hotly contested." Because intent is seldom proved by direct evidence, but rather is usually established by inference, the circumstances surrounding the alleged assault and burglary were particularly important here. *See generally State v. Lambert*, 612 N.W.2d 810, 813 (Iowa 2000) (noting a defendant's intent may be in-

ferred from his words and actions before, during, and after the alleged assault, as well as the circumstances preceding, surrounding, and following his conduct); *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985) ("To convict defendant of burglary, the jury ... was allowed to ... infer his intent to commit an assault from the circumstances of his entry and his subsequent acts."). Moreover, the witnesses' accounts of the event were remarkably at odds. Therefore, there was clearly a need for evidence that would clarify the circumstances of the defendant's conduct and thereby shed light on his intent. *See* Ordover Article, 38 Emory L.J. at 153 ("Where intent is contested and is the central issue in the case, the basis for admitting [extrinsic crime] evidence is very high.").

We also think the prior-acts evidence was strong proof that the defendant harbored more than a mild-mannered intent to talk to his wife when he pounded on the van window and pulled his wife out. It also was strong proof that he knew his wife would be frightened by his conduct and therefore that his act was intended to result in physical contact that would be insulting or offensive to the victim. Thus, we conclude the strength of the challenged evidence on the pertinent issues was high, another factor weighing in favor of admission.

▮▮▮▮ We must also consider whether there is clear proof the defendant committed the prior acts of violence. There was no dispute the defendant committed the prior assault on his wife; both the defendant and Susan confirmed at trial this confrontation had occurred as detailed in Susan's application for a protective order. Although the parties also agreed there was an incident involving a gun as described in

---

list of admissible 'other purposes' in rule 404(b) is not exclusive").

Susan's application, they disputed at trial whether the defendant threatened to use the gun against himself or against his wife. In assessing whether there is clear proof of prior misconduct, it is not required that the prior act be established beyond a reasonable doubt, nor is corroboration necessary. *See State v. Brown,* 569 N.W.2d 113, 117 (Iowa 1997). There simply needs to be sufficient proof to " 'prevent the jury from engaging in speculation or drawing inferences based on mere suspicion.' " *Id.* (citation omitted). We think Susan's verified application stating the defendant threatened her and both witnesses' desire that the defendant be exonerated at his criminal trial support the conclusion the prior threat was adequately established.

Weighed against the probative value of the prior-acts evidence is the danger of unfair prejudice. Certainly a fact finder, whether judge or jury, would have a tendency to conclude from the defendant's past misconduct that he has a bad character. But that type of prejudice is inherent in prior-bad-acts evidence and will not substantially outweigh the value of highly probative evidence. The more pertinent question is whether the evidence will prompt the fact finder to make a decision based on an emotional response to the defendant. *See Rodriquez,* 636 N.W.2d at 240 (defining "unfair prejudice"). Clearly the likelihood of an improper use of the evidence is reduced by the fact that the present case was tried to the court. *See State v. Casady,* 491 N.W.2d 782, 786 (Iowa 1992) (holding prejudice from other-crimes evidence "is reduced in the context of a bench trial"). We also note the court acquitted the defendant of the kidnapping charge, an indication the bad-acts evidence did not motivate the fact finder to categorically rule against the defendant. *See Rodriquez,* 636 N.W.2d at 243 n. 4 (noting jury acquitted defendant of one offense, which indicated a lack of prejudice).

Even without these circumstances, however, we would not conclude the trial court abused its discretion in deciding the possibility of prejudice did not substantially outweigh the value of admitting this evidence in this case. We agree with the following observation of a California appellate court in approving admission of prior-misconduct evidence:

> A trial is a search for the truth. The rules of evidence are designed to further this search, and to that end the Legislature has expressly provided for the admissibility of other acts to show "... motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." ... "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." [The defendant] was not entitled to have the jury determine his guilt or innocence on a false presentation that his and the victim's relationship and their parting were peaceful and friendly.

*People v. Zack,* 184 Cal.App.3d 409, 229 Cal.Rptr. 317, 320 (1986) (citations omitted); *accord Laible,* 594 N.W.2d at 335 ("Domestic abuse often has a history highly relevant to the truth-finding process."). Concluding that evidence of Taylor's prior bad acts was properly admitted, we turn to the defendant's claim that the evidence is not sufficient to support his convictions.

### III. *Sufficiency of the Evidence.*

 A. *General principles.* Our review is for the correction of errors of law. *See State v. Webb,* 648 N.W.2d 72, 75–76 (Iowa 2002). Thus, the trial court's factual findings are binding on appeal if supported by substantial evidence. *State v. Hopkins,* 576 N.W.2d 374, 377 (Iowa 1998). "Substantial evidence is such evidence as could convince a rational fact

finder that the defendant is guilty beyond a reasonable doubt." *Id.*

In deciding whether substantial evidence supports the trial court's verdict, a reviewing court considers all the evidence and views the record in the light most favorable to the trial court's decision. *State v. Corsi,* 686 N.W.2d 215, 218 (Iowa 2004). In addition, the appellate court indulges in all legitimate inferences and presumptions that may be fairly and reasonably deduced from the record. *Lambert,* 612 N.W.2d at 813.

B. *Domestic abuse assault.* Taylor was convicted of violating Iowa Code section 708.2A(1) by committing an assault as defined in section 708.1(1), which was domestic abuse as defined in section 236.2(2). Domestic abuse includes an assault, as defined in section 708.1, between separated spouses. *See* Iowa Code § 236.2(2)(*b*). Because Taylor's assault was found to have resulted in bodily injury, his offense was punished as a serious misdemeanor. *See id.* § 708.2A(2)(*b*). As we have already noted, an assault under section 708.1(1) requires proof of an act that "is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to [the victim]." *Id.* § 708.1(1).

The defendant questions the adequacy of the proof on the intent and bodily-injury elements of this crime. Because he did not mount a challenge to the evidence of bodily injury in the district court, he raises that issue on appeal as a component of his ineffective-assistance-of-counsel claim. Therefore, we will consider the sufficiency of the evidence of bodily injury when we discuss Taylor's contention that he received ineffective representation at his trial.

We turn then to the defendant's assertion there was insufficient evidence of the requisite intent. The defendant's principal argument is that the evidence shows his sole purpose in dragging Susan out of the van was to talk with her, not to harm her and not to engage in physical contact that would be insulting or offensive to her. The district court correctly concluded in its ruling on Taylor's motion for new trial that Taylor has "confused his 'motive' with his 'intent.'" As the district court observed, even if the defendant's motive was "simply to speak with his wife, his intent was to use physical force to accomplish that result." Several courts have noted the same distinction between intent and motive, explaining this distinction in terms similar to the following discussion of the Louisiana Supreme Court:

> "While intent and motive are frequently regarded as one and the same thing, there is a clear distinction between them. Motive is the cause or reason that moves the will and induces action for a definite result, while intent is the purpose to use a particular means to effect such result."

*State v. Abercrombie,* 375 So.2d 1170, 1175 (La.1979) (citation omitted); *accord Campbell v. State,* 718 So.2d 123, 130 (Ala.Crim. App.1997); *Craun v. State,* 762 N.E.2d 230, 237 n. 11 (Ind.Ct.App.2002); *People v. Hoffman,* 225 Mich.App. 103, 570 N.W.2d 146, 148 (1997); *Johnson v. State,* 872 P.2d 93, 97 (Wyo.1994). Thus, even if the court accepted Taylor's testimony that he only wanted to talk to his wife, that fact would not preclude a finding that Taylor intended to assault his wife in order to achieve his goal. *Cf. State v. McFarland,* 598 N.W.2d 318, 321 (Iowa Ct.App.1999) (upholding finding that bounty hunter intended to commit an assault when he broke down door to victim's trailer, notwithstanding defendant's testimony that his only intent was to make an arrest, not to assault anyone).

We address one other preliminary matter. In debating the sufficiency of the evidence, the parties have disagreed on whether assault is a specific intent or general intent crime. We do not find it helpful to set our discussion in that context. As this court noted in *State v. Bedard*, 668 N.W.2d 598 (Iowa 2003), *cert. denied*, —— U.S. ——, 125 S.Ct. 336, 160 L.Ed.2d 234 (2004), regardless of whether assault is a specific intent or general intent crime, the State must prove by evidence beyond a reasonable doubt that the defendant intended his act to cause pain or injury to the victim or to result in physical contact that would be insulting or offensive to the victim. 668 N.W.2d at 600–01.

■■ The State is assisted in meeting its burden of proof by the principle that an actor will ordinarily be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act. *Id.* at 601. In addition, as we indicated above, intent may be inferred from the circumstances surrounding the alleged assault. *See State v. Chang*, 587 N.W.2d 459, 462 (Iowa 1998) (finding sufficient evidence of intent from circumstances surrounding assault).

In the present case, there is no dispute that Taylor's actions were voluntary, and therefore the fact finder could infer that he intended the natural and probable consequences of his act. Given the fact the victim had been assaulted by the defendant in the recent past and had just obtained a no-contact order against him, the natural and probable consequence of the defendant's conduct was physical contact that was insulting and offensive to the victim. *See State v. Finnel*, 515 N.W.2d 41, 43 (Iowa 1994) (concluding defendant knew his contact with victim would be offensive to her; record showed victim had previously obtained a restraining order against the defendant); *cf. Lambert*, 612

N.W.2d at 814 (relying in part on evidence that defendant's contact with his estranged wife was in violation of a restraining order in inferring defendant's intent for purposes of burglary conviction). Moreover, the circumstances surrounding the alleged assault also support the court's finding the defendant intended to engage in physical contact that he knew would be offensive to his wife. Evidence was introduced at trial that throughout this event Taylor's wife was visibly upset, frantic, scared, crying, and hysterically screaming at Vincent to "just get away from him," "go, go, go, just go." At one point, the victim placed some construction paper on her head and curled up into a fetal position on the car seat in an attempt to hide from the defendant. Although Taylor testified at trial that he did not intend to hurt his wife. the statute does not require an intent to cause bodily injury, only an intent to have offensive physical contact.

Nonetheless, there is also evidence from which the court could infer the defendant intended his act to cause pain and injury. The record shows Taylor had difficulty getting Susan out of the van because she was still wearing her seat belt. According to Vincent, Susan's feet became caught in the seat belt, and Taylor yanked violently on the victim four or five times to get her out of the vehicle. A natural and probable consequence of this conduct would be pain or injury to the defendant's wife. In summary, there is abundant evidence the defendant intended to cause pain or injury to Susan, or intended to have physical contact that would be insulting or offensive to her. *See Wilker v. Wilker*, 630 N.W.2d 590, 596–97 (Iowa 2001) (concluding "unwelcome" physical contact was sufficient to support finding of assault under section 708.1(1)); *cf. Chang*, 587 N.W.2d at 462 (determining proof of intent required under section 708.1 was sufficient when natu-

ral consequence of defendant's act was to place victim in fear of painful or injurious contact).

Our conclusion is not undermined by the testimony of Taylor and his wife at trial, denying he intended these consequences and asserting Taylor only wanted to talk to his wife. The court was not required to accept their testimony and, in fact, stated that "the credible evidence [was] contrary [to their testimony]." *See State v. Lopez,* 633 N.W.2d 774, 786 (Iowa 2001) ("The court as fact finder could believe some of the testimony, all of the testimony, or none of it."). In particular, the court was at liberty to consider the personal interest these witnesses had in the outcome of this prosecution in considering their credibility. *See State v. Turner,* 630 N.W.2d 601, 609 (Iowa 2001). The defendant's interest in avoiding prison is obvious. As for his wife, the court found that "Susan was clear in her position that she does not want the defendant to be convicted of any crime." Accordingly, notwithstanding the exculpatory testimony of the defendant and the victim, we conclude a rational trier of fact could find beyond a reasonable doubt that the defendant had the requisite intent for the crime of domestic abuse assault.

■ C. *Burglary.* Taylor claims the evidence was insufficient to sustain his conviction of this crime in two particulars: (1) he did not have the requisite intent to commit an assault when he broke into Vincent's van; and (2) his wife did not sustain a bodily injury. We will consider the defendant's contention the evidence does not show that Susan suffered a bodily injury in our discussion of his ineffective-assistance-of-counsel claim. Therefore, our discussion here is limited to the intent element of the burglary offense.

As we have already stated, the prosecution was required to show the defendant intended to commit an assault when he broke or entered Vincent's vehicle. Upon our review of the entire record, we are convinced the circumstantial evidence supporting the intent component of the assault charge also supports the intent element of burglary. The defendant's irate and hostile actions preceding his breaking of the van window, as well as his purposeful action in pulling his frightened and tearful wife through the broken window, allow an inference that he intended to commit an act that would result in insulting or offensive physical contact with his wife when he entered the van. *See Finnel,* 515 N.W.2d at 43 (inferring intent to commit an assault from violent, nonconsensual entry, knowledge that victim wanted no contact with defendant, prior threats of violence, and assaultive actions after entry). Testimony that the defendant was surprised when the van window broke and the absence of any verbal threats of harm by the defendant do not shake our conviction that a rational trier of fact could find beyond a reasonable doubt that the defendant intended to assault his wife when he broke the van window and reached in to drag her out of the vehicle. Furthermore, as we have previously noted, even if the fact finder believed the defendant's asserted motive for his actions—his desire to talk to his wife—that relatively benign purpose does not negate the criminality of his actions. We conclude, therefore, that there is sufficient evidence to support the defendant's first-degree burglary conviction.

IV. *Ruling on Motion for New Trial.*

■ The defendant claims the trial court abused its discretion in denying his motion for a new trial under Iowa Rule of Criminal Procedure 2.24(2)(*b*)(6). This rule permits a court to grant a new trial "[w]hen the verdict is contrary to law or evidence." Iowa R.Crim. P. 2.24(2)(*b*)(6). A verdict is contrary to evidence when it is

against the weight of the evidence. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). Unlike a sufficiency-of-the-evidence standard under which the court " 'is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution,' " a weight-of-the-evidence standard allows the court to " 'weigh the evidence and consider the credibility of witnesses.' " *Id.* at 658 (citation omitted). Under the latter standard, " '[i]f the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.' " *Id.* at 658–59 (citation omitted). In deciding whether to grant a new trial on this ground, the trial court has wide discretion, but must exercise the discretion to grant a new trial "carefully and sparingly." *Id.* at 659. Appellate review of a weight-of-the-evidence claim "is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

The defendant claims an abuse of discretion based on his view that the weight of credible evidence showed he did not have the requisite intent. As we have already discussed, however, the record overwhelmingly shows the contrary. Therefore, we cannot say the district court abused its discretion in refusing to grant a new trial to the defendant.

## V. *Ineffective–Assistance–of–Counsel Claim.*

**A.** *General principles.* To prevail on an ineffective-assistance-of-counsel claim on direct appeal, the defendant must establish as a matter of law that counsel failed to perform an essential duty

and prejudice ensued. *See State v. Martinez*, 679 N.W.2d 620, 625 (Iowa 2004). If "the record is adequate to determine as a matter of law that the defendant will be *unable* to establish one or both of the elements of his ineffective-assistance claim," we will affirm his conviction without preserving such claims. *State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) (emphasis added); *accord State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003). If it is necessary to more fully develop a factual record, we preserve the ineffective-assistance claim for a possible postconviction relief action. *See Reynolds*, 670 N.W.2d at 411.

In considering the defendant's claims of inadequate representation, we find important the principle that counsel has no duty to raise an issue that lacks merit. *See State v. Horness*, 600 N.W.2d 294, 298 (Iowa 1999). We also find pertinent to the present case the requirement that the defendant must "show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984).

**B.** *Specific claims of ineffective representation.* The defendant claims his counsel performed inadequately with respect to the following matters: (1) failing to prevent admission of the prior-bad-acts evidence by filing a motion in limine and/or challenging admission of this evidence on due process grounds; (2) failing to challenge the sufficiency of the evidence on the issue of bodily injury; (3) failing to obtain a determination of the admissibility of the prior-bad-acts evidence before advising the defendant whether to waive a jury trial and whether to accept a plea bargain; (4) failing to depose the defendant's wife and Vincent; and (5) failing to obtain an expert

witness on the question of Susan's bodily injury. We conclude the appeal record is not sufficient to address the defendant's final three claims of ineffective assistance at this time. Therefore, those claims are preserved for a possible postconviction relief action.

C. *Prior-bad-acts evidence.* We first consider the defendant's allegations of ineffective assistance of counsel based on his counsel's failure to prevent admission of the prior-bad-acts evidence. We have held that this evidence was properly admitted. Therefore, we do not preserve the defendant's claim of ineffective assistance of counsel based on the timing of his counsel's challenge to the prior-bad-acts evidence, because even an earlier challenge would have been properly overruled.

The defendant also claims that admission of this evidence violated his due process right to a fair trial, a basis for exclusion not raised in the district court. *See generally Webb v. State,* 555 N.W.2d 824, 826 (Iowa 1996) (holding due process requires " 'fundamental fairness' in the proceedings" (citation omitted)). Because we have held the challenged evidence was admissible under rule 404(*b*) and rule 403, there is no due process violation. *See United States v. LeMay,* 260 F.3d 1018, 1026 (9th Cir.2001) ("As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."); *Coleman v. Mitchell,* 244 F.3d 533, 543 (6th Cir.2001) (holding admission of relevant prior-bad-acts evidence "was not fundamentally unfair and did not violate [defendant's] due process rights"); *United States v. Castillo,* 140 F.3d 874, 882 (10th Cir.1998) (stating there is no doubt that rule 404(*b*) is constitutional) (citing *Lisenba v. California,* 314 U.S. 219, 227–28, 62 S.Ct. 280, 285–86, 86 L.Ed. 166, 175

(1941)); *Poole v. Wood,* 45 F.3d 246, 250 (8th Cir.1995) (holding defendant was not denied his right to a fair trial by admission of prior-bad-acts evidence). Because a due-process objection to the admission of the prior-misconduct evidence would not have been successful, we do not preserve Taylor's ineffective-assistance claim based on his trial counsel's failure to make this objection.

■ D. *Sufficiency of evidence of bodily injury.* Taylor claims his trial attorney should have challenged the sufficiency of the evidence to prove the bodily-injury element of his assault and burglary convictions. A first offense domestic abuse assault is a serious misdemeanor if the assault "causes bodily injury." Iowa Code § 708.2A(2)(*b*). Similarly, burglary is in the first degree if the defendant "intentionally or recklessly inflicts bodily injury on any person" during the burglary. *Id.* § 713.3(*c*). "Bodily injury" as used in chapter 708 means " 'physical pain, illness, or any impairment of physical condition.' " *State v. Gordon,* 560 N.W.2d 4, 6 (Iowa 1997) (citation omitted). We apply the same definition for purposes of the burglary charge.

Taylor claims there was insufficient evidence of bodily injury because Susan told the hospital staff that she had no pain, and at trial she testified she was not injured by the defendant's actions. Taylor also contends the small bruises and abrasions sustained by the victim do not constitute bodily injury within the meaning of the criminal statute.

The defendant relies on our decision in *Gordon* to support his argument, but we think that decision is distinguishable. In *Gordon,* the defendant kicked the victim in the chest, leaving a red mark near the victim's sternum. 560 N.W.2d at 5. We held the trial court erred in instructing the jury in the defendant's assault trial that a

red mark or bruise "would constitute an impairment of physical condition, and therefore an injury." *Id.* at 5–6. We said the effect of this instruction was to direct a verdict in favor of the State on the bodily-injury element of the offense, thereby invading the province of the jury. *Id.* at 6. We did not say the effects of the assault described in that case could *never* qualify as a bodily injury. Thus, the error alleged in *Gordon* is entirely different from the deficiency asserted here. Nothing precluded the fact finder in the present case—the trial court—from making a factual determination based on all of the evidence that Taylor's wife did not sustain a bodily injury in the assault. Therefore, our reversal of the conviction in *Gordon* does not suggest a similar remedy is warranted here.

Turning to the evidence here, then, we think it is sufficient, when viewed in its entirety, to support the trial court's finding that the defendant's conduct caused bodily injury. In addition to the medical testimony that Susan was bruised from being pulled out of the van while still in her seat belt and that these bruises were painful when touched, Vincent testified that she observed cuts and abrasions on the victim's hands and bruising on her back. The day following the assault, Vincent stayed home to take care of the victim because the victim was stiff and sore. Even though Susan testified she was not injured by her husband's assault, she admitted she had bruises on her back and scratches on her neck. We think the evidence is sufficient to support a finding that the defendant's assault caused physical pain so as to meet the definition of bodily injury. *See State v. Canas,* 597 N.W.2d 488, 494–95 (Iowa 1999) (holding evidence that victim, who was struck in the chest with defendant's fist, had the wind knocked out of him and momentarily felt pain was sufficient proof of bodily injury notwithstand-

ing that victim had no visible injuries and did not require medical treatment), *abrogated on other grounds by Turner,* 630 N.W.2d at 606 n. 2. Consequently, even if defense counsel had challenged the sufficiency of the proof of bodily injury in the district court, he would not have been successful. It follows, then, that trial counsel was not ineffective for failing to raise this issue in his motion for new trial. Accordingly, this claim is not preserved.

### VI. *Summary and Disposition.*

The trial court did not abuse its discretion in admitting evidence of two prior incidents of violence and threats directed by the defendant toward his wife. This evidence was relevant to the defendant's motive and intent beyond showing a mere propensity to commit the crimes charged. Moreover, the trial court properly held the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

The evidence is sufficient to support the defendant's convictions of domestic abuse assault and burglary. Taylor's actions in reaching into the van and pulling his wife out, together with the surrounding circumstances and the inference that one intends the natural and probable consequences of one's voluntary actions, provide abundant support for finding the requisite intent to cause physical contact that will be insulting or offensive to another and intent to commit an assault.

The trial court did not abuse its discretion in overruling Taylor's motion for a new trial on the domestic abuse assault and burglary convictions as the record evidence convincingly established the defendant's guilt. Finally, there is no merit in the defendant's ineffective-assistance-of-counsel claims based on trial counsel's failure to prevent admission of prior-bad-acts

evidence or based on counsel's challenges to the sufficiency of the evidence of bodily injury. We preserve the defendant's claims of ineffective assistance of counsel as they relate to the waiver of his right to trial by jury, a possible plea bargain, and his counsel's trial preparation.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except LAVORATO, C.J., who takes no part.