# IN THE COURT OF APPEALS OF IOWA

No. 22-1864
Filed April 10, 2024

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JOHN MICHAEL HARKER,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Kimberly K. Shepherd, Judge.

The defendant challenges the admission of prior-bad-acts evidence in his trial for domestic abuse assault causing bodily injury. **AFFIRMED.**

John Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

At his trial for domestic abuse assault causing bodily injury, the district court admitted evidence John Harker was physically violent toward his wife on a previous occasion. Harker appeals, claiming the district court improperly admitted the prior-bad-acts evidence.

## I. Background Facts and Proceedings.

The State charged Harker with committing domestic abuse assault causing bodily injury on May 30, 2022; his wife, C.H., was the named victim.

Before trial, the court was asked to rule whether the State would be allowed to introduce evidence that before this charged offense, Harker had been physically violent toward C.H. The State indicated it intended to introduce footage from an officer's body camera that was recorded the night of May 30, which showed C.H. telling the officer that Harker also beat her up a couple years before, and ask C.H. during her testimony if Harker had previously assaulted her. Harker resisted, but the court ruled the evidence was admissible.

At trial, C.H. testified that on the night in question, Harker was experiencing erectile dysfunction. C.H. was performing oral sex on Harker with the goal of helping him achieve and maintain an erection, but it was not working. After a while, C.H. expressed that she wanted to stop. In his frustration, Harker "made the comment that if [C.H.] didn't help him finish, he would make [her], and [she] wouldn't like it." C.H. began to cry, and Harker punched her in the mouth and then tried to stick his fist in her mouth. Afterward, C.H. and Harker went to bed; once Harker was asleep, C.H. began sending text messages to her adult daughter, asking the daughter to contact the police. Police officers responded to the home,

and C.H. showed them an injury to the left side of her chin and broken blood vessels insider her mouth; she reported that Harker punched her. Over Harker's objection, the State introduced and played bodycam video, which showed C.H. stating, "Two years ago he beat me up bad too, and I withdrew the charges. I tried to go to counseling. I tried to make my marriage work. I can't do this." Also, during her testimony, the State asked C.H., "Has [Harker] assaulted you before?" and she answered, "Yes." Photographs were taken of C.H.'s injuries, and those were also introduced at trial.

Harker testified in his own defense. As he also told police officers on May 30,[1] Harker testified that C.H. has a history of mental-health and self-harm issues. He claimed C.H. hit herself, causing the injuries she attributed to him. Harker's mother also testified. When asked about her opinion as to C.H.'s character for truthfulness, Harker's mother testified, "I don't think she's real truthful." She also testified that about four years before, she saw C.H. "sitting in the middle of the bed and hitting herself and screaming and hitting herself on both sides of her face."[2]

---

[1] The jury was shown bodycam footage from May 30 when, after being asked about the injuries C.H. showed them, Harker told officers, "My spouse has a history of self-abuse and self-harm, and she's suffering from mental-health issues. She's been hospitalized several times."

[2] As part of his defense, Harker sought to re-call C.H. to question her about a letter she appeared to have written and filed in a 2018 Illinois case, in which she stated, "I regret to inform the Court and the parties, I have provided false statements and lied against my husband. . . . [Harker] did not hurt me. I hit myself. In fact, [Harker] tried to stop me." Defense counsel told the court he did not question C.H. about it on cross-examination because he was not aware of the letter at the time.

Although C.H. appeared at the courthouse, she reported feeling too unwell to testify. The court concluded Harker could not call her—even to make an offer of proof—because the court "ha[d] concerns about the health of the victim and [did] not see a purpose when the victim already testified, when the content of the letter

The jury found Harker guilty as charged. He was later sentenced to 365 days in jail with all but 120 days suspended. Harker appeals.

**II. Standard of Review.**

"In considering whether the trial court properly admitted prior-bad-acts evidence, we apply an abuse-of-discretion standard of review." *State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004).

**III. Discussion.**

Iowa Rule of Evidence 5.404(b) "sets out a specific rule governing admissibility of evidence of other crimes, wrongs, or acts—i.e., prior bad acts evidence—and outlines the criteria for when it is admissible." *State v. Thoren*, 970 N.W.2d 611, 625 (Iowa 2022). It states:

> (1) *Prohibited uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) *Permitted uses*. This evidence may be admissible for another purpose such as proving motive, opportunity, intent,

has already been determined by the court to not be relevant at this point or admissible."

On appeal, Harker claims:

[T]his record contains what appear to be interesting issues regarding the unavailability of the witness [C.H.] on the second day of trial, and how or whether that affected the court's choice to not recall her, and whether [defense counsel] committed ineffective assistance of counsel by not finding the 2018 Rock Island County filing earlier, or whether he had newly discovered evidence dropped into his lap mid-trial.

Harker does not otherwise develop any argument based on these facts. He asks us to preserve these issues for possible postconviction-relief proceedings. *See* Iowa Code § 814.7 (2022) ("An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. *The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes*, and the claim shall not be decided on direct appeal from the criminal proceedings." (emphasis added)).

preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Iowa R. Evid. 5.404(b).

In determining whether to admit prior-acts evidence, the court is required to rely on a three-step analysis. *State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014). "A court must first determine whether the evidence is relevant to a legitimate, disputed factual issue." *Id.* at 9. Second, the court must determine whether there is "clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)). And third, "the court must determine whether the evidence's 'probative value is substantially outweighed by the danger of unfair prejudice to the defendant.'" *Id.* (quoting *Sullivan*, 679 N.W.2d at 25).

At trial, the prosecutor argued the evidence was admissible because "[i]ncidences of prior assault are relevant to [d]efendant's specific intent, which is a required element that the State has to prove in this particular case." Later, the prosecutor restated the reason she intended to offer the evidence, claiming:

> [W]e are offering this to go towards the defendant's intent in this particular case. We anticipate that the defense is going to be that it's a straight denial. The defendant did not assault the victim, and that the victim actually caused these injuries herself. This evidence would be offered, again, to show the nature and circumstances of their relationship.

The district court failed to explicitly conduct any of the three steps of analysis, ruling in total: "Okay. Because of the briefness of the testimony and the evidence that's going to be offered, I will allow it."

In step one, the court must determine "whether the evidence is relevant to a legitimate, disputed factual issue." *State v. Thoren*, 970 N.W.2d 611, 626 (Iowa

2022). Meeting this requirement takes more than lip service claiming that an issue is in dispute. *See id.* at 627 (criticizing the district court and court of appeals for "recit[ing] the same litany of noncharacter purposes for the prior acts evidence without addressing how each was actually at issue in [the defendant's] case"); *accord id.* at 630 (concluding the district court abused its discretion to admit the challenged evidence to prove motive or intent when "the State made no effort to prove intent at trial and [the defendant] raised no defenses about intent. Intent and motive do not become controverted issues at trial simply because a lesser included offense has some mens rea element.").

That said, "[the defendant's] denials that he was the perpetrator put at issue all the elements of the offense." *State v. Richards*, 809 N.W.2d 80, 95 (Iowa 2012). And in a case involving allegations of domestic violence, "the defendant's prior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations." *Taylor*, 689 N.W.2d at 125; *see also State v. Goodson*, 958 N.W.2d 791, 801 (Iowa 2021) ("Surely the evidence showing the contentious nature of the relationship between [the victim] and [the defendant] was relevant on the question of whose story to believe."). As our supreme court has done before, we recognize that "[d]omestic violence is never a single isolated incident. Rather, domestic violence is a pattern of behavior, with each episode connected to the others." *Taylor*, 689 N.W.2d at 128 n.6 (citation omitted). Because Harker put all elements of the crime at issue with his denial, a prior act of physical violence in the relationship was relevant to a legitimate disputed issue at trial.

Harker does not dispute the State offered clear proof that the individual against whom the evidence is offered committed the bad act or crime. And, as our case law recognizes, C.H.'s testimony, "standing alone, satisfies the requirement of clear proof." *State v. Jones*, 464 N.W.2d 241, 243 (Iowa 1990); *see also Taylor*, 689 N.W.2d at 130 ("In assessing whether there is clear proof of prior misconduct, it is not required that the prior act be established beyond a reasonable doubt, nor is corroboration necessary.").

Finally, in step three the court must "determine whether the evidence's 'probative value is substantially outweighed by the danger of unfair prejudice to the defendant.'" *Putman*, 848 N.W.2d at 9 (citation omitted). Our case law outlines "a series of factors [to use] in weighing probative value against the danger of unfair prejudice," including:

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Id.* at 9–10 (citation omitted). "Weighing probative value against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make this judgment call.'" *Id.* at 10 (quoting *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006)). Here, the State introduced evidence of the prior assault through a short video clip (that showed C.H. telling an officer "Two years ago he beat me up bad too") and a question of C.H., where she answered "Yes" when the prosecutor asked, "Has [Harker] assaulted you before?" These brief mentions of the prior incident were unlikely to "appeal[] to the jury's sympathies, arouse[] its sense of horror, or provoke[] its instinct to punish." *State v. Neiderbach*, 837

N.W.2d 180, 202 (Iowa 2013) (citation omitted). That said, as a strong reminder, the district court should have instructed the jury on the limited purpose for which it could consider the evidence. *See Thoren*, 970 N.W.2d at 627 ("Even when prior bad acts evidence is admissible as relevant to a noncharacter purpose, its use should be limited to the specific purpose to which it is relevant. . . . Two decades ago we cautioned district courts to give a limiting jury instruction even if not requested." (internal citation omitted)); *cf. Putman*, 848 N.W.2d at 15 (considering that the district court gave an appropriate "instruction informing the jury of the limited purpose for which the evidence could be used" when considering whether the evidence was unduly prejudicial to the defendant). Still, we cannot conclude the district court abused its discretion in weighing the probative value of the evidence against the danger of unfair prejudice.

Finding no abuse of discretion in the district court's admission of the prior-bad-acts evidence, we affirm.[3]

**AFFIRMED.**

---

[3] Harker filed a number of pro se motions after this case was transferred to us. As Harker is represented by counsel, we may not consider the filings except a motion to disqualify his attorney, which we deny. *See* Iowa Code § 814.6A(1), (3).