**In the Interest of J.A.L., Minor Child,**

**J.A.L., Minor Child, Appellant.**

No. 04–1163.

Supreme Court of Iowa.

April 8, 2005.

Curtis Puetz of Puetz Law Office, P.C., Sioux Center, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, and Coleman J. McCallister, Assistant County Attorney, for appellee.

WIGGINS, Justice.

The juvenile court adjudicated J.A.L., a minor, a delinquent child after the court concluded J.A.L. falsely reported the placement of an explosive device in violation of Iowa Code section 712.7 (2003). At the hearing, the juvenile court admitted J.A.L.'s journal entries as character evidence. J.A.L. appeals the juvenile court's decision arguing his journal entries were not admissible, and the State failed to prove beyond a reasonable doubt that J.A.L. violated section 712.7. Although we agree with J.A.L. that the journal entries were inadmissible as character or other-acts evidence, we nevertheless affirm the finding of delinquency by the juvenile court because the admissible evidence established J.A.L. violated section 712.7 beyond a reasonable doubt.

## I. Proceedings.

The State filed a delinquency petition alleging on or about March 4, 2004, J.A.L. "did knowingly convey false information concerning the placement of an explosive device or material at the West Sioux Community High School, in violation of Iowa Code section 712.7." Iowa Code section 712.7 provides:

A person who, knowing the information to be false, conveys or causes to be conveyed to any person any false information concerning the placement of any incendiary or explosive device or material or other destructive substance or device in any place where persons or property would be endangered commits a class "D" felony.

Iowa Code § 712.7.

Before trial J.A.L. filed a motion in limine. His motion asked the court to exclude his personal journals and notes

found by his foster mother in his foster home. These materials contained disturbing handwritten messages of blood, murder, and death. The juvenile court took the motion under advisement. At the hearing, the juvenile court admitted the evidence subject to the motion. In a separate ruling filed at the same time it filed its delinquency order, the juvenile court denied the motion concluding the offered exhibits constitute " 'evidence of a pertinent trait of the (juvenile's) character' and are admissible" pursuant to Iowa Rule of Evidence 5.404(a)(1).

In its delinquency order, the juvenile court concluded beyond a reasonable doubt that J.A.L. was the "author [of] the three notes (information) and that the notes concerned the placement of an explosive device at a place where people would be endangered, a public school." Therefore, the juvenile court adjudicated J.A.L. a delinquent child and placed him in the custody of the department of human services for evaluation and placement in a juvenile facility.

## II. Issues.

We must determine whether J.A.L.'s journal entries were admissible and whether the State established J.A.L. violated Iowa Code section 712.7 beyond a reasonable doubt.

## III. Scope of Review.

■ Delinquency proceedings are not criminal proceedings but are special proceedings that serve as an alternative to a criminal prosecution of the child with the best interest of the child as the objective. *In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996); *In re Henderson*, 199 N.W.2d 111, 116 (Iowa 1972). We review delinquency proceedings de novo. *J.D.F.*, 553 N.W.2d at 587; *In re D.L.C.*, 464 N.W.2d 881, 883 (Iowa 1991). We presume the child to be innocent of the charges, and the court cannot find that the child engaged in the delinquent conduct unless the State can prove beyond a reasonable doubt that the child engaged in such behavior. Iowa Code § 232.47(10).

■ We generally review evidentiary rulings regarding other-acts evidence for abuse of discretion. *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001). A court abuses its discretion when it exercised its discretion on "grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997). A ground or reason based on an erroneous application of the law is clearly untenable. *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997). Even if we find the district court abused its discretion and admitted the evidence, we are not required to reverse if the admission of the evidence was harmless. *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004); Iowa R. Evid. 5.103(a).

## IV. Admissibility of the Journal Entries.

The State claims J.A.L. failed to preserve error on this issue arguing J.A.L. needed to do more than just file a motion in limine to preserve error. In his pretrial motion in limine, J.A.L. argued the State could not use the journal entries as character evidence under Iowa Rule of Evidence 5.404(a)(1) to prove that he acted as alleged in the delinquency petition. In his motion, J.A.L. also argued:

> while [rule] 5.404(b) [of the Iowa Rules of Evidence] does permit character evidence to be admissible for matters such as proof of motive, opportunity, intent, preparation, etc., none of these materials contain statements other than the angst and hopelessness expressed by a teenage boy who has drifted from placement

to placement and for whom the juvenile system has been a complete and total failure.

At the start of the delinquency adjudication hearing, the juvenile court indicated it would take the motion in limine under advisement and ultimately file a ruling on the motion. The State then formally resisted the motion on the record and offered the journal entries as eleven separate exhibits, subject to the motion in limine, with the understanding J.A.L. was objecting to the admissibility of the journal entries for the reasons set forth in his motion. The court admitted the journal entries subject to the motion in limine. This record is sufficient to preserve error on the admissibility of the journal entries.

■ The district court allowed the journal entries into evidence as character evidence under rule 5.404(*a*)(1). Character evidence of the accused is only admissible if offered by the prosecution to rebut character evidence offered by the accused. Iowa R. Evid. 5.404(*a*)(1). On appeal, the State acknowledges the journal entries are not admissible under rule 5.404(*a*)(1), because J.A.L. never offered any evidence of his character. Therefore, admitting the journal entries under rule 5.404(*a*)(1) constituted an abuse of discretion.

■ The State now argues the journal entries are admissible under rule 5.404(*b*) on the issue of the identity of the perpetrator. *See DeVoss v. State,* 648 N.W.2d 56, 62–63 (Iowa 2002) (recognizing appellate court may uphold evidentiary rulings on a theory not urged at trial based on "the realization that on retrial the error could easily be corrected").

■ Iowa Rule of Evidence 5.404(*b*) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the char-

acter of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Iowa R. Evid. 5.404(*b*). Journal entries can be other-acts evidence under rule 5.404(*b*). *See Turpin v. Kassulke,* 26 F.3d 1392, 1399–1400 (6th Cir.1994) (holding diary entries displaying defendant's longings for wealth are admissible to show the defendant had arranged her husband's death out of a desire to collect on his life insurance). To determine if other-acts evidence is prima facie admissible, courts must determine whether the other-acts evidence is relevant " 'to a legitimate issue in the case other than a general propensity to commit wrongful acts.' " *State v. Taylor,* 689 N.W.2d 116, 124 (Iowa 2004) (quoting *Sullivan,* 679 N.W.2d at 25). Even though the court may determine the other-acts evidence is prima facie admissible, the other-acts evidence must be excluded if the court determines the evidence's probative value is substantially outweighed by the danger of unfair prejudice to the person against whom the evidence is offered. *Id.*

Although both sides in oral argument conceded the identity of the perpetrator was a legitimate issue at the adjudication hearing, we still must decide whether the journal entries were relevant to the issue of identity. The State maintains the journal entries were relevant to establish the author of the threats. The State points to two of the eleven exhibits referencing bombing. One exhibit uses the phrase "Justice Of Bombers," while another contains the word "bombs" several times. It further argues all eleven exhibits contain "statements and/or attacks against authority figures" and are relevant to establish the identity of the author of the threats.

From these journal entries, the State contends the finder of fact could infer J.A.L. wrote the threats found in the computer room at the school.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. To permit the inference that similar acts establish the same person committed both acts, we have required that the other acts must be "strikingly similar" or of a "unique nature." *State v. Barrett*, 401 N.W.2d 184, 189 (Iowa 1987); *State v. Walsh*, 318 N.W.2d 184, 186 (Iowa 1982). Similarity or uniqueness is required to prevent identification based on the forbidden inference of propensity. *See United States v. Pisari*, 636 F.2d 855, 858–59 (1st Cir.1981); 2 Joseph M. McLaughlin et al., Weinstein's Federal Evidence § 404.22[5][c], at 404–122 (2d ed. 2004).

A review of J.A.L.'s journal entries indicates J.A.L. was fascinated with suicide, death, and murder. The journal entries, however, do not offer any indication J.A.L. was preparing to place a bomb threat at the school. The entries do not contain any plans to place a bomb threat or to kill any of his fellow students. A reader of the journal must use his or her imagination to fill in any planning or operational aspects of a plan to place a bomb threat at the school or a plot to kill his fellow students. Although the journal entries indicated J.A.L. was a troubled young man, the journal entries do not make it more probable that J.A.L. was the author of the notes found at the high school on March 4. *See Barrett*, 401 N.W.2d at 189 (holding sketchy plans for carrying out crimes contained in defendant's journal were not similar to the modus operandi of the crimes for which defendant was being tried and

were not admissible). The juvenile court was incorrect to admit into evidence the eleven exhibits containing the journal entries. Admitting other-acts evidence that is not relevant to identity constitutes an abuse of discretion. *See United States v. Lail*, 846 F.2d 1299, 1301 (11th Cir.1988) (holding despite some similarities between a prior bank robbery committed by the defendant and the bank robberies that were the subject of the defendant's trial, the prior bank robbery was not sufficiently similar to be admissible on issue of identity; thus, the trial court's admission of the prior bank robbery was an abuse of discretion requiring the appellate court to reverse the conviction).

We need not decide if the juvenile court's decision to admit the journal entries into evidence was harmless error because our review on whether the evidence established J.A.L. violated Iowa Code section 712.7 beyond a reasonable doubt is de novo on the record. We will not consider any of J.A.L.'s journal entries in our de novo review.

## V. De Novo Review on the Record.

 On our de novo review, we give weight to the juvenile courts fact-findings, especially when considering the credibility of witnesses, but those findings do not bind us. *J.D.F.*, 553 N.W.2d at 587. Applying this standard, we find that on March 4, 2004, a female student at West Sioux Community High School's computer lab printed materials for a class on purple paper. The purple paper, which had been on a shelf in the computer lab, had just been loaded into the printer by another student because the printer was out of paper. After the student printed her pages, she noticed on the backside of each of the three printed sheets were the typed messages: "You are all going to die;" "There is a bomb in the building;" and "I'm going to shoot you

all dead." She immediately informed her teacher, who in turn, notified the principal. Taking the threats seriously, school officials evacuated the school and called the police. The police called the state fire marshal.

Shortly thereafter, a male student informed a teacher that he knew the identity of the author of the threats. The male student told the authorities that on February 26, 2004, he had sat beside J.A.L. in the computer lab during a class. After J.A.L. printed out three separate sheets on purple paper, J.A.L. told the male student to read the sheets in the printer. The student read the sheets, which contained the identical threats found by the female student on March 4. After reading the sheets, he dropped the sheets into the garbage can. As the male student was leaving the computer lab, he observed J.A.L. alone in the computer lab, and a printer began printing.

After receiving this information from the male student, the authorities interviewed J.A.L., who denied making any of the threats. When the police asked J.A.L. whether the police would find his fingerprints on the printed sheets containing the threats, J.A.L. responded that they could be. The police never conducted any tests to determine whether J.A.L.'s fingerprints were on the paper. The fire marshal asked J.A.L. whether J.A.L. had anything to do with the threats and if J.A.L. knew of any explosive devices that might be in the school. J.A.L. denied any knowledge concerning the threats and any knowledge of any explosive devices that might be in the school. After this interview, the fire marshal searched the school with the assistance of a bomb-sniffing dog. The search determined there were no incendiary or explosive devices in the building.

To establish J.A.L. violated Iowa Code section 712.7, the State must prove: (1) J.A.L. conveyed or caused to be conveyed to any person false information concerning the placement of an explosive device; (2) J.A.L. conveyed or caused to be conveyed that the device was in a place where persons or property would be endangered; and (3) at the time J.A.L. conveyed or caused to be conveyed information concerning the placement of an explosive device, J.A.L. knew the information to be false. Iowa Code § 712.7. For a violation of section 712.7 to occur, the legislature did not require that the person conveying the information have the actual intent to cause fear or alarm in the person or persons who receives the threat. Additionally, the legislature did not make a violation of section 712.7 dependent on causing actual fear or creating a condition of public disruption. Unlike the crime of terrorism, a violation of section 712.7 is complete when a person, knowing the information to be false, conveys or causes to be conveyed to any person false information concerning the placement of an explosive device regardless of the impact it may have on the person who receives it. *See* Iowa Code § 708A.1(3) (providing " '[t]errorism' means an act intended to intimidate or coerce a civilian population, or to influence the policy of a unit of government by intimidation or coercion, or to affect the conduct of a unit of government ...").

J.A.L. admits the evidence presented at trial supports the conclusion that on February 26, he typed and printed the bomb threats that he encouraged the male student to read. He argues, however, that the evidence is insufficient to prove beyond a reasonable doubt that he violated section 712.7 on March 4, when the female student noticed the threats on the back of her printed pages. The State argues the crime was complete on February 26 when J.A.L. conveyed the threat to the male student, and what happened after this date

is irrelevant. In response to this argument, J.A.L. contends the State should not be allowed to argue the statute was violated on a date different from the date charged in the delinquency petition.

Although J.A.L. is correct that the delinquency petition alleged on or about March 4, J.A.L. "did knowingly convey false information concerning the placement of an explosive device or material at the West Sioux High School, in violation of Iowa Code section 712.7," we have held

> [t]he date or dates fixed in the indictment for the commission of a crime are not material, and a conviction can be returned upon any date within the limitations statute, if there is no fatal variance between the indictment allegations and the proof offered.

*State v. Washington*, 356 N.W.2d 192, 196 (Iowa 1984) (holding information charging defendant with theft on or about January 5, 1983, did not preclude defendant's conviction for thefts in February 1982, when evidence admitted tended to show commission of a theft in 1982); *see also State v. Young*, 172 N.W.2d 128, 129 (Iowa 1969) (holding information charging defendant with statutory rape on June 15, 1968, did not prevent defendant from being convicted for rape on June 22, 1968, when evidence admitted showed statutory rape occurred on June 22, 1968); *State v. Hardesty*, 261 Iowa 382, 393, 153 N.W.2d 464, 471–72 (1967) (holding indictment charging defendant with larceny between August 10 and August 14 did not immunize defendant from conviction when jury instruction stated the larceny occurred between August 1 and August 15, because evidence admitted showed the time period of the larceny to have occurred between August 1 and August 15).

The evidence admitted without objection showed J.A.L. conveyed information concerning the placement of an explo-

sive device to a male student on February 26, while they were both in the computer lab. Therefore, "there is no fatal variance between the indictment allegations and the proof offered." *See, e.g., Washington*, 356 N.W.2d at 196.

Relying on all this evidence, we find on this de novo review the evidence established beyond a reasonable doubt J.A.L., knowing the information to be false, conveyed false information concerning the placement of an explosive device in a place where persons or property would be endangered in violation of Iowa Code section 712.7. J.A.L. conveyed false information of the placement of an explosive devise to a male student on February 26, while in the computer lab. The State does not have to prove J.A.L. actually authored the threats found on March 4 for us to find a violation of section 712.7 under this record. The State has met its burden. Therefore, we find that the juvenile court was correct when it adjudicated J.A.L. a delinquent child.

## VI. Disposition.

Because we agree the admissible evidence establishes beyond a reasonable doubt that J.A.L. violated Iowa Code section 712.7, the juvenile court was correct in adjudicating J.A.L. a delinquent child.

**AFFIRMED.**

All justices concur except LARSON, CADY, and STREIT, JJ., who concur specially.

LARSON, Justice (concurring specially).

I concur in the affirmance of the delinquency adjudication, but I do not agree with the majority's conclusion that the juvenile court abused its discretion in allowing the journal entries into evidence.

They were clearly relevant on the issue of identity.

CADY and STREIT, JJ., join this special concurrence.