WIGGINS, Justice
(dissenting).
I respectfully dissent. I agree with the court’s analysis on the inadmissibility of the testimony that the police found child pornography on four items taken from Putman’s house and the reference to the two video titles that the witness read into the record for the reason this evidence does not go to motive. I part company with the court’s opinion because this evidence does not go to identity.
I reach this conclusion for two reasons. The first reason is the court is applying Iowa Rule of Evidence 5.404(6) as a rule of inclusion, rather than a rule of exclusion. The second reason is the caselaw does not allow a court to use the mere fact of possession of pornography to establish identity, no matter how similar the pornography is to Putman’s alleged act.
The court applies rule 5.404(6) as a rule of inclusion. In People v. Shymanovitz, 157 F.Sd 1154, 1159 (9th Cir.1998), abrogated by United States v. Curtin, 489 F.3d 935 (9th Cir.2007), a panel of the Ninth Circuit Court of Appeals held the defendant’s possession of adult gay male magazines was not relevant to show the defendant’s intent regarding the crimes of assault, child abuse, and criminal sexual conduct involving children. See 157 F.3d at 1155, 1158-60. I agree with the following statement made by the panel in its decision:
Criminal activity is a wildly popular subject of fiction and nonfiction writing — ranging from the National Enquirer to Les Miserables to In Cold Blood. Any defendant with a modest library of *17 just a few books and magazines would undoubtedly possess reading material containing descriptions of numerous acts of criminal conduct. Under the government’s theory, the case against an accused child molester would be stronger if he owned a copy of Nabokov’s Lolita, and any murder defendant would be unfortunate to have in his possession a collection of Agatha Christie mysteries or even James Bond stories. Woe, particularly, to the son accused of patricide or incest who has a copy of Oedipus Rex at his bedside.
Id. at 1159. The reasoning in Shymano-vitz is consistent with applying rule 5.404(6) as a rule of exclusion.
Ten years after Shymanovitz, the Ninth Circuit sat en banc in the case of United States v. Curtin, 489 F.3d at 937. There, the court held articles in the defendant’s possession describing sexual acts between an adult and minors were admissible on the element of specific intent. See id. at 958-59. The reason for disapproving of Shymanovitz and allowing this testimony was based on the rationale that Federal Rule 404(b) is a rule of inclusion, rather than a rule of exclusion. See id. at 944, 953-54. The court applies rule 5.404(6) as the Ninth Circuit did in Curtin; thus, the court applied this rule as a rule of inclusion.
In Iowa, we initially interpreted rule 5.404(6), our state equivalent to Federal Rule 404(b), as a rule of inclusion. See State v. McDaniel, 512 N.W.2d 305, 308 (Iowa 1994) (“[E]videnee of other illegal activities that tend to prove the defendants’ general propensity ... is relevant and should be admitted.”), overruled by State v. Sullivan, 679 N.W.2d 19, 28 (Iowa 2004). We subsequently overruled McDaniel and recognized rule 5.404(6) is a rule of exclusion. See Sullivan, 679 N.W.2d at 28 (“We think the better rule is that unless the prosecutor can articulate a valid, noncharacter theory of admissibility for admission of the bad-acts evidence, such evidence should not be admitted.”). As a rule of exclusion, the prosecutor must prove a valid, noncharacter theory of admissibility for the testimony that the police found child pornography on Putman’s computer and the reference to the two video titles that the witness read into the record. The prosecutor claims this evidence goes to identity. I disagree.
We have held that other-acts evidence can go to identity if the other acts are strikingly similar or of a unique nature. See In re J.A.L., 694 N.W.2d 748, 753 (Iowa 2005). We require similarity or uniqueness to prevent the fact finder from determining “identification based on the forbidden inference of propensity.” Id. First, the mere possession of pornography does not qualify as an act. Additionally, there is no showing in the record the child pornography found on the four items taken from Putman’s house, other than the video titles read into the record, are similar or unique to this crime. Thus, the district court erred by allowing the DCI investigator’s testimony of finding child pornography. The mention of dissimilar child pornography is enough to require a new trial. See State v. Barrett, 401 N.W.2d 184, 189 (Iowa 1987) (finding the admission of a journal entry in violation of rule 404(6) (now rule 5.404(6)) required a new trial, even though a similar journal entry was admissible under rule 404(6)).
The best argument the prosecutor can make for the admission of the video titles is that the video titles read in the record are similar or unique to the crime; thus, this evidence goes to identity. The problem with this argument is Iowa caselaw does not support the admissibility of these types of written material to show identity without another act or a plan. In J.A.L., *18 the State alleged the juvenile was delinquent for falsely reporting the placement of an explosive device in violation of Iowa Code section 712.7 (2003). 694 N.W.2d at 750. The State introduced notes from the juvenile’s journal into evidence. See id. at 750-51. In holding these writings excluda-ble under rule 5.404(6), we said:
A review of J.A.L.’s journal entries indicates J.A.L. was fascinated with suicide, death, and murder. The journal entries, however, do not offer any indication J.A.L. was preparing to place a bomb threat at the school. The entries do not contain any plans to place a bomb threat or to kill any of his fellow students.
Id. at 758.
Another case supporting the exclusion of these video titles is Barrett. There, the State charged the defendant with two counts of murder in the first degree in violation of Iowa Code sections 707.1 and 707.2 (1985). Barrett, 401 N.W.2d at 185. The State introduced into evidence two journals made by the defendant. Id. The first journal detailed a plan by the defendant to kill several people, including one for whom the defendant was the beneficiary of the person’s life insurance policy. See id. at 185-86. The State’s theory as to why the defendant killed a second person was that it was the defendant’s intent to make the police believe the second person killed the first person, then committed suicide. Id. at 185. The second journal referred to kidnapping and ransoming an unidentified woman. Id. at 186. It also included plans for kidnapping and murdering a newspaper carrier and plans to plant false clues about these crimes. Id.
The district court admitted both journals into evidence, and the defendant was convicted. Id. at 185-86. On appeal, we determined the first journal was not ex-cludable under rule 404(6 ) because the defendant had, in fact, bought life insurance on one of the murder victims, and the journal dispelled the notion the defendant bought the life insurance for a legitimate reason. See id. at 188. However, we held the second journal was excludable under rule 404(6) because the writings were not similar to the modus operandi of the murders for which the defendant was tried. See id. at 189. We then reversed the convictions and remanded for a new trial. Id.
The lesson we learn from J.A.L. and Barrett is that mere writings do not in and of themselves make the writings admissible. There has to be some link between the material sought to be introduced and the crime charged. In J.A.L., the juvenile’s journal entries do not support an inference he was responsible for falsely reporting the placement of an explosive device. See 694 N.W.2d at 753. In Barrett, one journal was admissible only because the defendant bought life insurance on one of the victims. See 401 N.W.2d at 188. Here, the possession of videos with the specific titles shows Putman’s fascination with child rape. However, these videos do not offer any indication that Put-man was the child rapist on the night in question or that the crime he allegedly did was in the same manner as the acts committed in the videos.
The court’s opinion also relies on State v. Butler, 415 N.W.2d 634 (Iowa 1987), and State v. Walsh, 318 N.W.2d 184 (Iowa 1982). Both cases are distinguishable. In Butler, the burglar’s tool used by the defendant in previous crimes and the tool used in the case on appeal were strikingly similar to permit admission of the other-acts evidence for the purpose of proving identity. 415 N.W.2d at 636. In Walsh, there was a sufficient similarity between circumstances of a homicide for which the defendant was previously convicted and *19 the homicide for which the defendant was on trial to admit the evidence for the purpose of proving identity. 318 N.W.2d at 186-87. Thus, these cases are distinguishable because the act for which the State charged each defendant was similar and unique to other acts done by each defendant.
Here, we have no other act done by Putman. There is no connection between the videos or the crime charged. Rather the alleged other act is merely possessing certain titles of child pornography that, on their face, appear to be similar to the crime.
Other states faced with similar facts would not let the video titles or pornography into the record. Kentucky is one such state. There, the Commonwealth charged a defendant with sodomy in the first degree committed on a boy under the age of twelve. Dyer v. Commonwealth, 816 S.W.2d 647, 648 (Ky.1991), overruled in part on other grounds by Baker v. Commonwealth, 973 S.W.2d 54 (Ky.1998). The jury found the defendant guilty of the crime. Id. at 650. At trial, the court admitted evidence that graphically illustrated and described homosexual activity, among other sexually explicit materials. See id. at 648-49.
The Supreme Court of Kentucky reversed the defendant’s conviction, finding the materials were inadmissible to profile the defendant as a pedophile. See id. at 652-54. In doing so, the court said, “We declare, unqualifiedly, that citizens and residents of Kentucky are not subject to criminal conviction based upon the contents of their bookcase unless and until there is evidence linking it to the crime charged.” Id. at 652.
The Supreme Court of South Carolina came to the same conclusion. See State v. Nelson, 331 S.C. 1, 501 S.E.2d 716, 724 (1998). There, the defendant was convicted of four counts of first-degree criminal sexual conduct with a three-year-old child and four counts of lewd act on a three-year-old child. Id. at 717. The district court admitted materials at the defendant’s trial including children’s toys, testimony about certain videos, photographs depicting young girls, and other evidence seized from the defendant’s bedroom. Id. at 717-18. Additionally, the district court admitted the defendant’s statements to police that he had fantasies about children. Id. at 723. The Supreme Court of South Carolina found this evidence not only inadmissible to establish identity, but also inadmissible to establish motive, intent, absence of mistake or accident, or a common scheme or plan. Id. at 718-19, 724. The court reasoned that although the defendant had materials reflecting the defendant was a pedophile, the jury did not have the option to infer the defendant was acting in conformity with his alleged classification as a pedophile when he committed the crimes with which he was charged. Id. at 719. The court went on to say making such an inference was an improper basis to determine guilt; thus, the evidence should not have been admitted. Id. The court cited cases from Florida, Idaho, New York, Texas, Kentucky, Ohio, and Tennessee that reached similar conclusions. Id. at 719-22.
Some states allow such materials to be admissible as the complete story of the crime if the defendant showed the objects to the child. E.g., State v. Ericson, 159 N.H. 379, 986 A.2d 488, 496 (2009). Another jurisdiction has allowed such materials to be admissible as evidence of intent in a prosecution for traveling across state lines with the intent to engage in a sexual act with a minor and using an interstate facility to attempt to persuade a minor to engage in sexual acts. See Curtin, 489 F.3d at 936, 958-59.
*20 I am unable, however, to find any authority saying the prosecutor can use the mere possession of pornography depicting similar acts to those of the alleged crime to prove identity. There is nothing in the record to show any connection between the pornography and the video titles introduced into evidence in this case. If this really is the law, people of the State of Iowa must be careful in what they watch or read. The State can use a person’s reading of the book Lolita to convict that person of underage sexual abuse. The State can use a person’s fascination with crime shows to convict that person of murder.
There is no showing Putman acted upon his fascination with child pornography at the time of the crime. Without that link, the court impermissibly allowed the jury to infer Putman was acting in conformity with this character trait when he committed the crimes with which he was charged. I would borrow a phrase from the Supreme Court of Kentucky and declare, un-qualifiedly, that citizens and residents of Iowa are not subject to criminal conviction based upon the contents of their bookcase unless and until there is evidence linking it to the crime charged.
Finally, the prosecutor did not limit her final argument to the two video titles the court held admissible in her final argument. Instead, she waited until her rebuttal argument and argued the child pornography on the defendant’s computer and on every single item taken from the defendant’s home linked him to the crime. By not limiting her argument to the two video titles and using in her argument the pornography found on the computer and other drives, she used the totality of the pornography for propensity rather than identity. Accordingly, I would reverse Putman’s conviction and remand for a new trial.
HECHT and APPEL, JJ., join this dissent.