**IN THE COURT OF APPEALS OF IOWA**

No. 15-0285
Filed January 13, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DARRELL LEE ABBOTT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Benton County, Paul D. Miller

(guilty pleas) and Ian K. Thornhill (sentencing), Judges.

        Darrell Abbott appeals his convictions for arson in the third degree and

false reports.  **CONVICTIONS REVERSED, SENTENCES VACATED, AND**

**CASE REMANDED WITH DIRECTIONS.**

        Mark C. Smith, State Appellate Defender, and Bradley M. Bender,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Darrell Abbott appeals his convictions, based upon *Alford* pleas, for arson in the third degree and false reports. Abbott contends his trial counsel was ineffective in allowing him to plead guilty without a factual basis to support the false reports charge and when he had not been advised of the potential penalties of the arson charge.

## I.     *Background Facts and Proceedings*

In 2011, a fire caused extensive damage to portions of a Shellsburg home and a shed. A snowmobile parked between the home and shed was also damaged. Following an investigation into the circumstances surrounding the fire, the State filed a trial information charging Darrell Abbott with arson in the first degree, a class "B" felony (count I); child endangerment, aggravated misdemeanors (counts II and III); and criminal mischief in the fourth degree, a serious misdemeanor (count IV). Abbott pled not guilty and waived his right to speedy trial.

The parties reached a plea agreement; Abbott pled guilty to third-degree arson pursuant to an *Alford* plea,[1] and the State agreed to dismiss the other charges against him. The court accepted Abbott's plea and set sentencing for a later date. The parties subsequently realized there had been a misunderstanding as to Abbott's plea—namely, that the parties believed the offense of third-degree arson was a class "D" felony when it was actually an aggravated misdemeanor.

---

[1] An *Alford* plea is a variation of a guilty plea where the defendant does not admit participation in the acts constituting the crime but consents to the imposition of a sentence. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970); *State v. Burgess*, 639 N.W.2d 564, 567 n.1 (Iowa 2001).

The district court entered an order rescinding the plea "due to a mistake of fact by the parties" and scheduled a jury trial.

The parties reached a new plea agreement a few weeks later. Abbott pled guilty pursuant to an *Alford* plea to two charges: third-degree arson, an aggravated misdemeanor, and false reports, a class "D" felony.[2] The parties agreed to recommend that the two-year sentence on the arson charge would run concurrent to the five-year sentence on the false reports charge. The State agreed to dismiss the remaining charges. The district court accepted Abbott's plea and set sentencing for a later date.

Abbott filed a motion in arrest of judgment, challenging his counsel's representation.[3] The court heard the parties' arguments on the motion at the sentencing hearing. Following the hearing, the court denied the motion as untimely and on its merits.[4] The court sentenced Abbott to serve indeterminate terms of imprisonment not to exceed five years on the false reports charge and not to exceed two years on the arson charge, to run concurrently, as well as fines and costs.

---

[2] The State filed an amended and substituted trial information with the new offense of false reports pursuant to the plea agreement, which the district court approved.

[3] Apparently Abbott's counsel retired sometime between the guilty plea hearing and the filing of the motion in arrest of judgment. The attorney filing the motion in arrest of judgment was a co-worker of Abbott's prior counsel. In his motion, Abbott claimed prior counsel "did not adequately investigate the matter, ignored evidence presented by [Abbott], was not prepared for trial due in part to an excessive caseload," and further alleged the "plea negotiations were not conducted in good faith" and "he was coerced by his own counsel into accepting a plea bargain."

[4] Abbott also filed a motion for new counsel asserting "he does not feel that he will receive acceptable representation by his new counsel based on his prior working relationship with [his prior counsel]," and "[s]pecifically, that his current counsel will not fully and zealously pursue and expose any misconduct and/or mistakes made by [his prior counsel]." The court denied the motion.

Abbott appeals. Additional facts will be set forth below as relevant to his claims on appeal.

## II.    *Standard of Review*

We review ineffective-assistance-of-counsel claims de novo. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). To succeed on such a claim, Abbott must prove both that (1) his counsel failed to perform an essential duty, and (2) he suffered prejudice as a result of his counsel's failure. *See id.*

## III.    *Ineffective Assistance of Counsel*

Abbott contends his trial counsel was ineffective in allowing him to plead guilty without a factual basis to support the false reports charge.[5] Before accepting a guilty plea, the district court must first determine the plea has a factual basis, and that factual basis must be disclosed in the record. *State v. Finney*, 834 N.W.2d 46, 61-62 (Iowa 2013); *see* Iowa R. Crim. P. 2.8(2)(b). "This requirement exists even where the plea is an *Alford* plea." *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999).

"Where a factual basis for a charge does not exist, and trial counsel allows the defendant to plead guilty anyway, counsel has failed to perform an essential duty." *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014). "Prejudice is inherent in such a case."[6] *Id.* Accordingly, with regard to this claim, our first and only

---

[5] Abbott also challenges his counsel's assistance with regard to his plea to third-degree arson on the grounds that he was not advised of the potential penalties of that charge. In light of the disposition of this case based on Abbott's challenge to his plea to the charge of false reports, however, we need not address Abbott's claim with regard to his arson plea.

[6] In other words, when trial counsel permits a defendant to plead guilty and waive the right to file a motion in arrest of judgment absent a factual basis to support the guilty plea, counsel violates an essential duty, and prejudice is presumed. *See State v. Rodriguez*, 804 N.W.2d 844, 849 (Iowa 2011).

inquiry is whether the record shows a factual basis for Abbott's guilty plea to the charge of false reports. In determining whether a factual basis exists, "we consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence report." *Id.*

The offense of false reports is defined in Iowa Code section 712.7 (2011), which provides:

> A person who, knowing the information to be false, conveys or causes to be conveyed to any person any false information concerning the placement of any incendiary or explosive device or material or other destructive substance or device in any place where persons or property would be endangered commits [false reports,] a class "D" felony.

Section 712.7 therefore requires the following elements be shown by the record to establish a factual basis for Abbott's guilty plea for false reports:

> (1) On or about October 12, 2011, Abbott conveyed or caused to be conveyed information concerning the placement of an incendiary or explosive device or material or other destructive substance or device;
> (2) Abbott conveyed or caused to be conveyed information that the device, material, or substance was in a place where persons or property would be endangered; and
> (3) When conveying the information, Abbott knew the information to be false.

*See also In re J.A.L.*, 694 N.W.2d 748, 754 (Iowa 2005) (analyzing the sufficiency of the evidence to support a charge of false reports under Iowa Code section 712.7).

The evidence before the court at the guilty plea hearing included the following. In October 2011, Nikkole Abbott was married to Abbott, and she was residing with her two children and Abbott at a home in Shellsburg. On or about

October 8, Nikkole and Abbott engaged in a domestic dispute, and Abbott left the home. In the early morning hours of the next day, a fire broke out at the residence. Nikkole woke up, noticed the fire, and exited the home with her children. The home sustained "heavy fire damage." The fire also damaged a wood shed on the property and a van parked nearby. "[O]n the ground between the [home] and the shed was a Polaris 500 snowmobile which revealed extensive fire damage and all or most of the combustible materials had burned off leaving a metal shell."

An investigation ensued. On October 12, Special Agent Justin Wade of the State Fire Marshall's Office interviewed Abbott. Abbott told Special Agent Wade that after he and Nikkole argued on October 8, he left the home and went to a friend's home nearby. Initially, Abbott denied any involvement with the fire. Later in the conversation, Abbott denied using any gasoline to start the fire, but he stated he threw a cigarette into the leaves by the shed before leaving Nikkole's home. Asked if there was anything in the area that could build the fire, Abbott stated his snowmobile by the shed was the only thing and that there was still fuel in it.

On the night of the fire, a neighbor, Nathan King, observed an individual dumping what appeared to be a liquid from a container resembling a gas can onto a snowmobile between the home and shed on Nikkole and Abbott's property. According to King, the individual then used a match or lighter to ignite the fire, and the snowmobile immediately caught fire. King awoke his father who called 9-1-1. King could not identify the individual but observed the individual appeared to be a male that resembled Abbott.

At the end of November, Abbott told his cousin Donnie Wheeler that he lit his snowmobile on fire, but he did not intend to burn down the home or shed. According to Wheeler, Abbott stated he and Nikkole had been fighting and she had everything so he burned the only thing that was not hers—the snowmobile.

With regard to the charge of false reports, the State alleged Abbott's statements to Special Agent Wade when he was interviewed on how the fire started constituted a false report, because Abbott told Special Agent Wade he flicked a cigarette into the leaves, but he actually used gasoline or a similar substance to start the fire.[7]  Specifically, the State argues when Abbott "told investigators that he had not used gasoline to start the fire, he was conveying false information with knowledge of its falsity."

However, we find persuasive Abbott's contention that his conduct in this case is not the type of conduct criminalized by Iowa Code section 712.7.  "[A] violation of section 712.7 is complete when a person, knowing the information to be false, conveys or causes to be conveyed to any person false information concerning the placement of an explosive device regardless of the impact it may have on the person who receives it."  *J.A.L.*, 694 N.W.2d at 754.  For example, Iowa courts have recognized a bomb threat as a type of conduct criminalized under section 712.7.  *See id.* at 750-51 (affirming the defendant's conviction of making a false report for writing notes concerning the placement of an explosive

---

[7] Specifically, count V of the amended trial information, false reports, alleged:

> The said DARRELL LEE ABBOTT, on or about the 12th day of October, 2011, in the County of Benton, and State of Iowa, did make a false report to the Fire Marshall concerning the placement of an incendiary material in a place where people or property would be endangered, in violation of 712.7 of the Code of Iowa.

device at school); *see also State v. Colwell*, No. 05-0280, 2006 WL 468732, at *1 (Iowa Ct. App. Mar. 1, 2006) (affirming the defendant's conviction of making a false report for making telephone calls warning a foundry of an alleged bomb on the premises); *State v. Stover*, No. 02-0400, 2003 WL 1038944, at *1 (Iowa Ct. App. Mar. 12, 2003) (affirming the defendant's conviction of second-degree robbery and false reports for robbing a bank while using a device that appeared to be a bomb and a demand note referencing the alleged bomb); *State v. Miles*, No. 00-1078, 2002 WL 984445, at *6 (Iowa Ct. App. May 15, 2002) (affirming the defendant's conviction of making a false report for making several bomb threats via telephone calls to the local principal and radio station). But Iowa courts have not recognized conduct similar to Abbott's in this case as supporting a conviction under section 712.7.

In *State v. Ahitow*, 544 N.W.2d 270, 271-72 (Iowa 1996), the court addressed the claim that the defendant's response to an investigating officer's question with a false alibi did not fall within the statute criminalizing false reports to law enforcement authorities, Iowa Code section 718.6, of which he was convicted. Agreeing with the defendant, the court distinguished his action in responding to the officer's question from an affirmative action of "reporting," which the court interpreted to require "affirmative steps to communicate." *Ahitow*, 544 N.W.2d at 273. The court reversed the defendant's conviction under section 718.6, concluding: "Ahitow did not *report* false information to the officer; he merely *provided* false information to the officer upon the officer's questioning. We certainly do not approve of Ahitow's fabrication of an alibi. However, we

conclude his conduct is not punishable under Iowa Code section 718.6 (1993)." *Id.* at 274.

We find the court's ruling in *Ahitow* with regard to the conduct encompassed under section 718.96 persuasive in our analysis of the conduct criminalized under section 712.7 in this case. Indeed, Abbott's conduct in this case as alleged by the State (i.e., lying in response to the investigator's questioning following a fire) is inapposite to such affirmative conduct as making a bomb threat or conveying false information regarding the placement of an explosive device. Under these facts and circumstances, we conclude the record does not show a factual basis for Abbott's guilty plea to the charge of false reports under section 712.7. Trial counsel failed to perform an essential duty in allowing Abbott to plead guilty where a factual basis for the charge does not exist, and prejudice is inherent. *See Gines*, 844 N.W.2d at 441.

## IV.    *Disposition*

"Where a guilty plea has no factual basis in the record" and "the record establishes that the defendant was charged with the wrong crime," we reverse the conviction, vacate the sentence, and remand the for dismissal of the charge. *See Schminkey*, 597 N.W.2d at 792; *see also Gines*, 844 N.W.2d at 442. Here, because the State did not establish a factual basis for the false reports charge, and with our reversal of that conviction, "the State [does] not get the benefit of its plea bargain in exchange for dismissing [three other counts against Abbott]." *See Gines*, 844 N.W.2d at 442. Thus, "we must put the State back in the position it was in before making the plea agreement." *Id.* To do that, we must reverse Abbott's convictions for false reports and arson, vacate the sentences

imposed for those convictions, and remand the case back to the district court to allow the State to reinstate any charges dismissed from the amended trial information in contemplation of the plea agreement and proceed against Abbott on all charges, including any new charges it wishes to file, supported by the available evidence. *See id.*

**CONVICTIONS REVERSED, SENTENCES VACATED, AND CASE REMANDED WITH DIRECTIONS.**