# IN THE COURT OF APPEALS OF IOWA

No. 18-2082
Filed November 27, 2019

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JOSEPH RAY WILLIAM FREDERICK,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Joseph Frederick appeals multiple criminal convictions following a jury trial.

**AFFIRMED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**SCOTT, Senior Judge.**

Joseph Frederick appeals multiple criminal convictions following a jury trial. He argues the district court abused its discretion in allowing the presentation of prior-bad-acts evidence.

**I.    Background Facts and Proceedings**

Frederick was in an on-again, off-again relationship with S.H. for one and one-half to two years prior to the incident resulting in his convictions.  On the evening of June 24, 2018, shortly after another discontinuation of the relationship between S.H. and Frederick, S.H. and four of her relatives—her son, A.H.; her mother, C.G.; her daughter, C.H.; and a cousin, O.G.—were traveling in a car.[1] A.H. observed a car weaving in and out of traffic; it ultimately pulled up beside them.  A.H. testified he observed Frederick sitting in the back seat of the vehicle. A.H. pointed out Frederick's presence to his co-passengers.  A shot from a BB gun was fired into the rear passenger side window, shattering it.  C.G. testified she looked back and observed Frederick in the adjacent car.  A.H. suffered cuts to his hands.  C.H. suffered a cut to her arm.  O.G. suffered an eye injury, which ultimately left her blind in her left eye.

Frederick was charged with several crimes in relation to the shooting.  Prior to trial, he filed a notice of his intention to offer an alibi defense.  He also filed a motion in limine, in which he sought the exclusion of evidence concerning prior bad acts.  The State filed a notice of its intention to use evidence of prior bad acts

---

[1] S.H. was driving, C.G. was in the passenger seat, A.H. was seated behind the driver seat, O.G. was seated behind the passenger seat, and C.H. was in the middle of the back seat.

pursuant to Iowa Rule of Evidence 5.404(b)(2).  The State highlighted claims that S.H.'s "car and/or house ha[ve] been previously shot up with a BB gun by" Frederick and allegations that Frederick physically abused her in the past. Frederick resisted.  In a subsequent brief, the State explained the evidence would show Frederick and S.H. were in a nearly two-year, on-again, off-again relationship that ended shortly before the shooting and, every time the couple previously broke up, Frederick would engage in acts of violence, intimidation, harassment, and vandalism toward S.H.  The State argued said acts were relevant for reasons other than a general propensity to commit wrongful acts, namely Frederick's modus operandi, intent, and identity.  The State requested the court to allow presentation of the evidence and provide the jury with a cautionary instruction to not use the evidence for an improper purpose.[2]

Following a hearing, the court agreed with the State that the prior acts were relevant to identity and motive but concluded "the multiplicity of the acts are far too prejudicial."  The court ruled the State could only present evidence concerning the January incident, in which Frederick allegedly attempted to ram his vehicle into S.H.'s vehicle, and the March assault.

---

[2] The State attached a number of police reports to its brief referencing the incidents of harassment and violence.  The first concerned a January 2018 incident.  S.H. reported she and Frederick had recently broke up and Frederick attempted to ram her vehicle at a railroad crossing.  In a second report about a week later, S.H. reported Frederick drove by her residence and "shot holes in the front windows."  In early February, S.H. reported Frederick ran into her car while it was parked outside of her residence, leaving a dent.  In late February, S.H. reported she got in a verbal altercation with Frederick and Frederick began swinging a baseball bat at her vehicle, ultimately striking the windshield and one of the tail lights.  Finally, in March, S.H. reported Frederick assaulted her, hit her with a handgun, pointed it at her, and threatened to kill her.

At trial, S.H. testified over objection that, shortly after a break up between her and Frederick in January, she called the police because Frederick was following her and came "full towards [her] vehicle" while she was stopped waiting for a train. She additionally testified that, shortly after another break up in March, police were called concerning "another incident."

Ultimately, the jury found Frederick guilty as charged. The court denied Frederick's combined motion for a new trial and in arrest of judgment. Frederick appealed following the imposition of sentence.

## II. Standard of Review

Appellate review of the district court's decision to allow the presentation of prior-bad-acts evidence is for an abuse of discretion. *State v. Richards*, 879 N.W.2d 140, 145 (Iowa 2016). This is our most deferential standard of review, *State v. Roby*, 897 N.W.2d 127, 136 (Iowa 2017), and "we give a great deal of leeway to the trial judge who must make [a] judgment call." *Richards*, 879 N.W.2d at 145 (alteration in original) (quoting *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006)). An abuse of discretion will only be found where the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Eisenhauer ex rel. T.D. v. Henry Cty. Health Ctr.*, ___ N.W.2d ___, ___, 2019 WL 5460622, at *3 (Iowa 2019); *State v. Heard*, ___ N.W.2d ___, ___, 2019 WL 5089718, at *3 (Iowa 2019). "If an abuse of discretion occurred, reversal will not be warranted if error was harmless." *Richards*, 879 N.W.2d at 145 (quoting *State v. Reynolds*, 765 N.W.2d 283, 288 (Iowa 2009)).

### III. Analysis

Our rules of evidence provide "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). However, evidence of a crime, wrong, or other act, "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

Our supreme court has delineated a three-step analysis in determining whether prior-bad-acts evidence is admissible under rule 5.404(b)(2):

> (1) "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts"; (2) "there must be clear proof the individual against whom the evidence is offered committed the bad act or crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

*Richards*, 879 N.W.2d at 145 (alteration in original) (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)); *accord State v. Putnam*, 848 N.W.2d 1, 8–9 (Iowa 2014).

As to the first step, we easily conclude that evidence of prior incidents between Frederick and S.H. "is highly probative of [Frederick]'s probable motivation and intent" in the occurrence resulting in his convictions. *See Richards*, 879 N.W.2d at 146 (quoting *State v. Taylor*, 689 N.W.2d 116, 125 (2004)). In all three situations, the harassment in January, the assault in March, and the shooting in June, involved acts of aggression by Frederick following the discontinuation of the relationship between him and S.H. The history "set[] the stage for their later

interaction." *Id.* (quoting *Taylor*, 689 N.W.2d at 128 n.6). Perhaps more relevant in this case, given Frederick's alibi defense and the conflicting testimony as to where he was at the time of the shooting, the prior acts were highly probative on the issue of identity. *Cf. id.* ("Because there was conflicting testimony among witnesses about the incident, [the] '[e]vidence reflecting the nature of the relationship between the defendant and victim would be crucial to a fact finder resolving inconsistencies.'" (second alteration in original) (quoting *Taylor*, 689 N.W.2d at 127). Two individuals, A.H. and C.G., testified they observed and identified the shooter as Frederick. However, other evidence was presented indicating C.G. was unable to provide a description of the shooter to police officers. Other sworn testimony asserted Frederick was in bed sick on the evening in question. In addition, Frederick presented evidence that he was set up by way of an exhibit of a social media message to him from S.H., apologizing and noting another individual "put me up to setting you up." When confronted with the evidence at trial, S.H. denied she sent the message, claiming Frederick hacked her social media account. On the other hand, another witness testified she was with Frederick when he received the messages from S.H. The conflicting evidence rendered the issue of identity a legitimate issue in dispute. *See id.* at 147–52 (discussing legitimacy requirement).

That being said, proving identity with prior bad acts is subject to "a more demanding test than the general relevancy test." *Putnam*, 848 N.W.2d at 11. The prior acts must be "strikingly similar" to the subject offense or "unique in nature." *Id.* (quoting *In re J.A.L.*, 694 N.W.2d 748, 753 (Iowa 2005)). This standard "requires drawing out and comparing the peculiar circumstances of the acts." *Id.*

at 12. The prior acts presented in this case concerned harassing and aggressive behavior toward S.H. on the part of Frederick following a break up between the pair. The subject offense concerned the same type of behavior by someone, toward S.H., following a break up between the two. We find the standard met.

As to the second step, Frederick makes no argument the prior acts were not supported by clear proof, instead conceding "a witness'[s] testimony," which we have here, "can satisfy the requisite standard." *Accord Richards*, 879 N.W.2d at 152; *Putnam*, 848 N.W.2d at 9. We deem any argument to the contrary waived.

We turn to the third and final inquiry, whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Richards*, 879 N.W.2d at 145. We consider a number of factors in this assessment:

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Id.* at 152 (quoting *Taylor*, 689 N.W.2d at 124).

As to the need for and other evidence available and the strength or weakness of the evidence presented on the issue, we have already noted above that the evidence was conflicting. While Frederick generally argues the State's evidence trumped his evidence outright on the issue of identity, we are unpersuaded that circumstance alone mandates reversal, nor do we agree the State's evidence was so much more powerful than his that the evidence was not needed. The fact of the matter is, the evidence was conflicting. As noted, Frederick agrees the prior acts are supported by clear proof. As to the degree the evidence would prompt the jury to decide the case on an improper basis, we fully

acknowledge that prior bad acts might instill a desire to punish in a jury and juries are susceptible to deciding cases on an improper basis. *Id.* Here, the district court significantly limited the State's presentation of evidence of prior acts. The State requested to present evidence concerning five previous incidents between Frederick and S.H.; the court only allowed evidence concerning two. The court only allowed "general terms" about the incidents, their dates, and what happened. The testimony itself was limited—S.H. merely testified that in January, she called the police because Frederick was following her and came "full towards [her] vehicle" while she was stopped waiting for a train. She additionally testified that, shortly after another break up in March police were called concerning "another incident." "[C]oncerns about prejudice to a defendant might be eased by narrowing the scope of the prior-bad-acts evidence presented to the jury." *Putnam*, 848 N.W.2d at 15. Here, the testimony comprised an extremely minute portion of the evidence presented to the jury. "[T]he district court carefully circumscribed the scope of the other acts testimony and thereby limited its potential prejudicial impact." *Richards*, 879 N.W.2d at 152. The State and court even offered to provide a cautionary instruction concerning the prior-bad-acts evidence. Defense counsel declined, stating, "I don't need one." Frederick cannot be heard to complain on appeal about any prejudice flowing from a lack of a cautionary instruction. *See, e.g.*, *Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) (noting litigants "cannot deliberately act so as to invite error and then object because the court has accepted the invitation").

Upon our review, we are unable to say the probative value of the prior-bad-acts evidence was *substantially* outweighed by the danger of unfair prejudice.

Affording the district court a great deal of leeway, *Richards*, 879 N.W.2d at 145, nor do we find the district court exercised its discretion on untenable grounds or reasons or to an extent clearly unreasonable. Thus, we affirm Frederick's criminal convictions.

**AFFIRMED.**