# IN THE COURT OF APPEALS OF IOWA

No. 23-1554
Filed September 4, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT LEE MORISTON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, John M. Sandy,

Judge.


        A defendant appeals his convictions for forgery and identity theft.

**AFFIRMED.**


        Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines,

for appellant.

        Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney

General, for appellee.


        Considered without oral argument by Tabor, C.J., and Ahlers and

Langholz, JJ.  Sandy, J., takes no part.

**AHLERS, Judge.**

In April 2022, a Texas man was notified that a check written in his name had been used at a Walmart in Spirit Lake, Iowa. The Texas man had never been to Spirit Lake and promptly contacted the Spirit Lake police department to report the activity. During the investigation, the Texas man learned that three additional checks had been written in his name and used at Bomgaars, another business in Spirit Lake. All four transactions occurred between January 20 and January 21, 2022, and involved checks drawn on a bank account the Texas man had closed more than ten years earlier.

Following an investigation and a prosecution that involved multiple amendments of the trial information and severance of some charges, Robert Moriston was charged with and brought to trial in this case on two counts of forgery as a habitual offender, identity theft, and possession of methamphetamine. The jury found him guilty on all four counts, and he was sentenced accordingly.

On appeal, Moriston challenges only his convictions for forgery and identity theft. He argues that the evidence is insufficient to support the jury's verdicts and the district court erred in admitting evidence of prior bad acts. We begin our discussion with Moriston's sufficiency-of-the-evidence challenge, as success on that challenge would require us to remand for judgment of acquittal, in which case it would be unnecessary to address his evidentiary challenge. *See State v. Dorsey*, 16 N.W.3d 32, 40 n.1 (Iowa 2025).

I.      **Sufficiency of the Evidence**

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). The jury's verdict

will be upheld if supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted). Although Moriston challenges the admissibility of certain evidence introduced at trial, we consider all evidence admitted at trial—regardless of its admissibility—when assessing the sufficiency of the evidence. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

In challenging his convictions for forgery and identity theft, Moriston does not dispute that the person who passed the checks committed the crimes charged. He simply contends the State failed to prove he was the person who passed the checks. So, we need not get into the details of the elements of forgery and identify theft. Instead, we focus only on whether substantial evidence supports the jury's verdict that Moriston was the person who passed the checks at the two stores.

Based on the evidence presented at trial, reasonable jurors could have found the following facts. On January 20, 2022, a man entering the Walmart caught an employee's attention because the man was completely covered, with only his eyes visible. The employee testified that it was immediately "apparent [the man] was trying to conceal his identity, so that triggered [the employee] to watch him." The employee walked right past the man and observed him to be a large, tall man, about six-feet three-inches in height and weighing 300 pounds or more. The man wore a black flat-bill hat, gray neck gaiter, black-framed glasses, a black

hooded sweatshirt, jeans, Nike shoes with white trim around the bottom, a black wristwatch, and black rubber gloves. After selecting items for purchase, he walked to the checkout counter at the very back of the store and wrote a check. When asked for identification, the man verbally provided the Texas man's driver's license number. The cashier initially entered the number as an Iowa ID, and it was rejected. Upon re-entry as a Texas ID, the transaction was approved. The man left the store and loaded the items into a silver Chevy Suburban with distinctive decals on both top corners of the rear windshield, and a third decal on the rear passenger-side window.

That same day, and again on January 21, a man wearing nearly identical clothing and driving a Suburban with the same distinctive decals was observed shopping at Bomgaars, where additional forged checks were passed. While the surveillance footage had been deleted by the time of the investigation, an employee was able to recover still images of the man and vehicle.

Investigating law enforcement officers received a tip identifying the license plate number of a vehicle with the same decals as those observed in the Walmart and Bomgaars surveillance footage and traced the Suburban's registration to Teresa Moriston. Through social media, officers then identified her husband, Robert Moriston, and believed him to be the same person from the surveillance footage. Photos on social media revealed Robert Moriston to be a large, heavyset man like the person in the store surveillance photos and videos.

Search warrants were executed at the Moriston residence and for the Chevy Suburban. The search of the residence uncovered drug paraphernalia; methamphetamine; and blank checks, a credit card, and a driver's license bearing

the names of individuals not residing at the address. No evidence directly linked to the Texas man was found in the residence or vehicle.

When police located Moriston, he attempted to conceal his identity by giving a false name and acted aggressively toward officers. *See State v. Bloom*, 983 N.W.2d 44, 50 (Iowa 2022) (finding a false story told after a crime may be used as evidence of guilt). After making a phone call to his wife from jail, Moriston intentionally destroyed his cell phone. When officers collected his belongings, Moriston possessed several items that matched the clothing from the suspect in the surveillance footage, including dark-rimmed glasses, Nike shoes with white trim around the bottom, and a gray neck gaiter. He also possessed three checks and two credit cards issued in the names of individuals who did not reside with him. Each of those individuals testified that they did not know Moriston and had not authorized him to possess their financial information.

Given this evidence, a reasonable juror could conclude that Moriston was the individual who passed the forged checks and used the Texas man's identification information. To challenge these findings, Moriston emphasizes that the State's case relied almost entirely on circumstantial evidence. He points to the fact that the man's identity was concealed in the surveillance footage and argues that no physical evidence links him to the Texas man. He further contrasts his admission of guilt to possession of methamphetamine with his continued denial of involvement in forgery and identity theft. Based on these arguments, Moriston contends that the evidence was insufficient to identify him as the person responsible for the crimes.

Yet it is well-established that direct and circumstantial evidence are equally probative. *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). The jury was free to weigh the evidence and assign credibility to the testimony as it saw fit. *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019) ("The jury is entitled to reject a party's evidence and credit the evidence against it.").

Here, the jury was presented with Moriston's alternative explanations and found them unpersuasive. On appeal, Moriston essentially asks this court to reweigh the evidence and substitute his interpretation of the facts for that of the jury—something we are not permitted to do in assessing a sufficiency-of-the-evidence challenge. *See Brimmer*, 983 N.W.2d at 256 ("It is not our place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" (quoting *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006))). The jury considered the evidence and reasonably found that Moriston was the individual who committed the acts of forgery and identity theft. Because identity is the only element Moriston challenges and substantial evidence supports the jury's findings on that issue, his sufficiency challenge fails.

## II. Evidence of Prior Bad Acts

Before trial, Moriston filed a motion to sever the counts related to his possession of identification information and documents belonging to individuals other than the Texas man. The district court granted the motion to sever. However, at the final pretrial conference, the State requested a ruling on whether it could introduce this evidence at the trial on the charges related to the Texas man's information. The district court granted the State's request, reasoning that

the evidence was not being offered for propensity purposes, but rather to prove identity—specifically, that Moriston was the individual who committed the charged acts as part of a common scheme of using other people's identities.

On appeal, Moriston argues the district court erred in admitting evidence that he possessed checks and an expired temporary driver's license of individuals other than the Texas man. He contends the evidence constitutes improper character evidence in violation of Iowa Rule of Evidence 5.404(b).

We review evidentiary rulings for an abuse of discretion. *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021). "An abuse of discretion occurs when the [district] court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2019) (cleaned up).

Under Iowa Rule of Evidence 5.404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2). Here, Moriston does not challenge that someone committed forgery and identity theft. He only challenges that he is that someone. Thus, the central issue at trial was identity.

When a perpetrator's identity is contested, bad-acts evidence may be relevant to prove identity. *State v. Putman*, 848 N.W.2d 1, 11 (Iowa 2014). To determine whether evidence is admissible to establish identity, the court first determines whether the evidence is relevant to a disputed factual issue. *Id.* at 9.

Second, there "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* (citation omitted). If both these criteria are met, the court must then assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.*

Here, Moriston's possession of financial documents belonging to unrelated individuals is relevant to the disputed issue of identity. The fact that he was found in possession of checks and identification documents belonging to others tends to support the State's theory that he was the individual who committed forgery and identity theft as to the Texas man. There is also clear proof that Moriston committed the bad act, as the items were found in his residence when it was searched and on his person when he was apprehended.

Moriston asserts that the test is still not satisfied because the standard for admitting prior bad acts to prove identity is more demanding, requiring that the acts be "strikingly similar" or of a "unique nature." *Id.* at 11 (quoting *In re J.A.L.*, 694 N.W.2d 748, 753 (Iowa 2005)). He emphasizes that the individuals whose financial documents he possessed all lived in his local area, unlike the Texas man. Moriston argues that this distinction undermines any inference that he came into possession of the Texas man's information in the same way. He also points out that, while he had possession of the others' financial information, there is no evidence he ever physically possessed the Texas man's ID or any debit card in his name. He contends that the introduction of this evidence improperly took away focus from the key issue at trial—whether he committed forgery and identity theft with the Texas man's identification information—and turned it to the highly prejudicial possession of unrelated identification and financial documents. We disagree.

The Iowa Supreme Court does not interpret the admissibility of prior bad acts as narrowly as Moriston suggests. *Id.* at 11 ("[W]hen assessing the relevancy of prior-bad-acts evidence, we look not only for similarities between two acts committed by the defendant, but also for similarities between contents of materials possessed by the defendant and acts committed by the defendant."). The fact that Moriston was found in possession of checks and identification documents belonging to other third parties simply adds to the body of circumstantial evidence linking him to the charged offenses. It did not distract from the trial's central issue of whether he had possessed and used the Texas man's information. Rather, it supported the State's theory that the person in the surveillance footage and photos was Moriston.

It was reasonable for the district court to find that this evidence fell within an exception to the rule prohibiting propensity evidence. *See* Iowa R. Evid. 5.404(b)(2). While Moriston may have suffered minimal prejudice, we find no abuse of discretion in the court's determination that the probative evidence was not substantially outweighed by the danger of unfair prejudice to Moriston, so we find no error in the admission of this evidence.

## III. Conclusion

Sufficient evidence supports the jury's verdict finding that Moriston committed the crimes. We reject his evidentiary challenge, as the district court did not abuse its discretion in admitting the evidence. Accordingly, we affirm Moriston's convictions for two counts of forgery and one count of identity theft.

**AFFIRMED.**