# IN THE COURT OF APPEALS OF IOWA

No. 23-1476
Filed December 4, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ADAM EUGENE COY,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Greene County, Kurt J. Stoebe, Judge.

A defendant appeals his convictions for attempted murder, willful injury causing serious injury, and domestic abuse causing bodily injury, arguing the district court erred in admitting testimony of prior acts of domestic assault. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

"Nobody tries to shoot themself in the back of the head." Following a jury trial, Adam Coy was convicted of one count of attempted murder, one count of willful injury causing serious injury, and one count of domestic abuse causing bodily injury. He argues the district court erred in permitting testimony of prior acts of domestic assault after he claimed his fiancé, who was shot in the back of the head at further than point-blank range, attempted to commit suicide or was accidentally shot. We affirm.

## I. Background Facts and Proceedings

In 2023, Adam Coy and his fiancé, J.S., were engaged and lived together in Grand Junction. On February 4, Adam fired a shot into the ceiling of their bedroom and then shot J.S. in the back of the head. A neighbor confirmed the shots occurred around 8:15 p.m. A 911 call placed at 9:52 p.m. brought law enforcement to the residence. They found dried blood in the hallway leading to the bedroom. J.S. was still conscious and vomiting in the bedroom. Coy provided inconsistent claims relating to what occurred, including that J.S. "shot herself in the head—right in front of [him]" and that she had been "depressed."

At trial J.S. testified, over objection, that Coy had previously abused her. She testified that on one occasion he took a "big knife" and "dragged the blade down my arm," leaving a scar still visible at the time of trial. She also testified that Coy owned a double-edge sword that he would hold against her stomach, and that he strangled her "two to three times a week." She also recounted times that he urinated on her and other incidents in which he threw hot cigarette butts on her. She testified that, on multiple occasions, Coy would hold a gun to her head with

the safety on. J.S. confirmed that Coy escalated this behavior when, on February 4, he demonstrated to her that he was turning the safety off and pointed the gun at her. Her next memory was waking up on the bedroom floor.

The jury convicted Coy for attempted murder, willful injury causing serious injury, and domestic abuse assault. He now appeals.

## II. Standard of Review

"Evidentiary rulings are generally reviewed for abuse of discretion." *State v. Tipton,* 897 N.W.2d 653, 690 (Iowa 2017). The district court has abused its discretion when it "exercises its discretion on 'grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* (citation omitted). "Even if an abuse of discretion is found, reversal is not required unless prejudice is shown." *State v. Buenaventura,* 660 N.W.2d 38, 50 (Iowa 2003).

## III. Discussion

Coy argues the district court erred in admitting evidence of prior domestic abuse.

Evidence of other crimes, wrongs, or acts are inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). But such evidence may be admissible for other purposes "such as proving . . . intent." Iowa R. Evid. 5.404(b)(2).

We undertake a three-step test in determining whether the proffered evidence is consistent with the uses permitted under rule 5.404(b)(2). First, if the "evidence is relevant and material to some legitimate issue in dispute, then it is prima facie admissible." *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). Next,

"there must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* Third, if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.*

Coy does not contest the first two prongs in the three-step test for admitting bad-acts evidence under rule 5.404(b)(2). And the State does not contest that the evidence was prejudicial. So we are tasked with deciding whether the district court erred in determining the admitted evidence did not cause "*unfair* prejudice" to Coy. *See id.* (emphasis added).

Our supreme court acknowledges the "logical connection between a defendant's intent at the time of a crime, when the crime involves a person to whom he has an emotional attachment, and how the defendant has reacted to disappointment or anger directed at that person in the past, including acts of violence, rage, and physical control." *State v. Taylor*, 689 N.W.2d 116, 125 (Iowa 2004). The supreme court has also recognized that "[d]omestic abuse often has a history highly relevant to the truth-finding process." *Id.* at 130 (citation omitted). Domestic violence is often "a means to achieve power and control by the abuser and once successfully used engenders additional incidents of abuse." *Id.* at 128 n.6 (citation omitted). "Thus, evidence of prior bad acts is especially relevant and probative in domestic violence cases because of the cyclical nature of domestic violence." *Id.* (cleaned up).

Coy's intent was directly at issue before the jury. He expressly stated to authorities that J.S. had attempted suicide. At trial, Coy argued that the gunshots were accidental, and his history of abuse was vital to rebutting that story. Previous

acts of domestic violence, particularly the previous instances when Coy had pointed a firearm at J.S., helped disprove any theory that February 4 was an accident. His history of pointing a firearm at J.S. while leaving the safety on was directly relevant to whether his act of turning the safety off on February 4 was accidental or intentional.

Moreover, J.S.'s testimony relating to prior bad acts was a relatively small amount of testimony compared to the hundreds of pages of total trial testimony. The State focused on the eight minutes Coy spent assaulting J.S. before the gunshots. The State noted the ninety-nine minutes that passed between the gunshots and the 911 call. The prosecutor emphasized Coy's lack of emotion, his decision to change his clothing immediately after shooting J.S., and Coy's own words: "I'm going to keep kicking you."

Lastly, the State relied on the expert opinions of multiple medical doctors, including the emergency room doctor treating J.S., who stated that "[n]obody tries to shoot themself in the back of the head" and that the trajectory, range, and location of the wound would make it "very, very unusual to be self-inflicted."

We conclude that the admission of evidence relating to Coy's prior acts of domestic abuse was not an abuse of discretion and affirm his convictions.

**AFFIRMED.**